No. 87-68

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

LARRY D. THORNOCK,

Plaintiff and Appellant,

-vs-

STATE OF MONTANA,

Defendant and Respondent.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edward K. Duckworth argued, Ronan, Montana
Michael J. McKeon argued, Anaconda, Montana

For Respondent:

R. Scott Currey argued, Agency Legal Services Bureau,
Helena, Montana

Submitted:  September 15, 1987

Decided:  November 4, 1987

Filed:  NOV 4 - 1987

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff Larry D. Thornock appeals from an order of the District Court of the Twentieth Judicial District granting summary judgment for the State. He had claimed that the State had been negligent in failing to inspect hazardous places of employment as required by § 50-71-321, MCA. He argues that this inaction by the State allowed the sawmill at which Thornock worked to operate in a hazardous condition and led to an accident in which Thornock lost his left arm at the elbow. We are presented with the question of whether the federal Occupational Safety and Health Act (29 U.S.C. §§ 651 et seq.) preempted that statutory duty. The District Court ruled that it did and granted summary judgment for the State. We affirm.

On December 1, 1982, Thornock injured his left arm while attempting to unjam a block of wood that had stalled a conveyor belt called a feed chain at the Flathead Lumber Company in Polson, Montana. He did not turn off the power that fed the machine. The result was that his arm was pulled into the drive chain and sprocket. Thornock filed a claim for Workers' Compensation benefits and received a full and final settlement in September 1984. One of the owners of the mill stated in his deposition that the State had never inspected that feed chain in the five years that the sawmill had been operating. Section 50-71-321, MCA, adopted as part of the Montana Safety Act in 1969, provides:

> (1) The division [of Workers' Compensation] shall inspect from time to time all the places of employment defined in the Montana Workers' Compensation Act as being hazardous and the machinery and appliances therein contained for the purpose of determining whether they conform to law.

> (2) A report of such periodic inspection shall be filed in the office of the division and a copy thereof given the employer. Such report shall not be open to public inspection or made public except on order of the division or by the division in the course of a hearing or proceeding.

Mr. Thornock filed his claim against the State on January 10, 1985. In paragraph V of his complaint, he alleged that the State's failure to inspect the feed chain constituted negligence that was a proximate cause of the "traumatic amputation" of his arm. The State answered that it had no responsibility for the safety of working conditions at the Flathead Lumber Company in December 1982 because its authority had been preempted by the federal Occupational Safety and Health Act. Both parties moved for summary judgment and briefed the issue. On January 21, 1987, the District Court granted the State's motion for summary judgment, pursuant to Rule 54(b), M.R.Civ.P., and denied Thornock's motion. The District Court wrote:

> In 1970 the U.S. Congress enacted OSHA to assure safe and healthful working conditions and provides [sic] that states may assert jurisdiction where there are no federal standards in effect.
>
> 29 C.F.R., Sec. 1900.265 was adopted and set federal safety standards for sawmills and adopted specific construction, operation and maintenance standards for conveyors . . . Since the adoption of OSHA and said regulations, the State of Montana has not followed the procedure provided therein for the state to assert jurisdiction over occupational safety in this area of conveyors in sawmills.
>
> The federal law and regulations adopted pursuant thereto have preempted the state law which is the basis of Plaintiff's complaint and Defendant is therefore

3

entitled to summary judgment as a matter of law.

On appeal, Thornock concedes that OSHA preempts the promulgation of safety standards and enforcement of such standards from the State's purview. However, he argues that OSHA has not preempted the State's responsibility of gathering and compiling information as to safety in the work place. He argues also that the wording of OSHA does not meet the United States Supreme Court's test for the applicability of the doctrine of preemption as set forth in Silkwood v. Kerr-McGee Corp. (1984), 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443. We shall consider these arguments in turn.

His first argument--that the State's duty to inspect hazardous work places and prepare reports on their safety is not preempted by OSHA--is founded on the premise that OSHA was intended to preempt states from setting and enforcing their own standards as to worker safety but not as to inspections. He notes that 29 U.S.C. § 667(a) allows state agencies to "[assert] jurisdiction under state law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title." He notes that 29 U.S.C. § 655 establishes the rulemaking procedure by which the Secretary of Labor may "promulgate, modify, or revoke any occupational safety or health standard," and claims this does not include the process of inspection. Because inspection is not included in 29 U.S.C. § 655, he claims that § 50-71-321, MCA, is still valid because of 29 U.S.C. § 667(a)'s provisions guarding state duties. Furthermore, he notes that 29 U.S.C. § 667(b) provides a means by which any state may petition the Secretary of Labor "to assume responsibility for development and enforcement . . . of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been

4

promulgated . . . " He concedes, however, that the State of Montana has never completed such a petition.

Thornock relies on P & Z Co., Inc. v. District of Columbia (D.C. 1979), 408 A.2d 1249, in which the Court of Appeals for the District of Columbia distinguished the three functions of OSHA as standard specification, standard enforcement, and information gathering and reporting. P & Z Co., 408 A.2d at 1250. That court held that OSHA does not preempt state duties unless standards have been promulgated under 29 U.S.C. § 655. Thornock contends that since information gathering and reporting has not been considered to be a standard, information gathering and reporting are not preempted by OSHA. P & Z Co., 408 A.2d at 1250. The District of Columbia Court of Appeals found nothing in the legislative history of OSHA to support the appellant's claim that a statute requiring an employer to report employee injuries had been preempted by OSHA. P & Z Co., 408 A.2d at 1251, n. 7. Similarly, in Berardi v. Getty Refining & Marketing (N.Y. 1980), 435 N.Y.S.2d 212, the court ruled that while OSHA was meant to be exclusive in the promulgation and enforcement of standards, a state may take jurisdiction over any safety issue on which there is no federal standard. Berardi, 435 N.Y.S.2d at 216. Thornock's reliance on these two cases, however, is misplaced because the holdings of these cases are at odds with the allegations of Thornock's complaint. In his complaint, Thornock cites § 50-71-321, MCA, as requiring the State to inspect the sawmill's feed chain and enforce standards. He claims it was the State's failure to inspect the premises along with the State's failure to require the sawmill to be operated safely that was the proximate cause of his injuries. Whereas P & Z Co. holds that a state or other local jurisdiction can exercise duties not preempted by OSHA, Thornock specifically incorporates into his complaint a duty preempted by OSHA--the

5

right to enforce standards. The thrust of the holding in P & Z Co. is that the adoption and enforcement of work place safety standards by the states is preempted where federal standards have been promulgated. P & Z Co., 408 A.2d at 1250.

Section 50-71-321, MCA, does not exist in a vacuum; it is an integral part of a state scheme to set and enforce safety codes, §§ 50-71-101 through 50-71-334, MCA. Thornock concedes, however, that the provisions in that state scheme for establishing and enforcing safety standards are preempted by OSHA, but contends the element of the scheme providing for state inspection is still vital. He argues, in effect, that the State still has a duty to inspect work sites even though its authority to set the standards to be inspected or to impose sanctions for discrepancies has been superseded.

The tort of negligence arises when one has a duty recognized by law, he breaches that duty, the breach of the duty serves as a legal cause of another's injury, and that injury is an actual loss or damage. Roy v. Neibauer (Mont. 1981), 623 P.2d 555, 556, 38 St.Rep. 173, 174; Pretty on Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60. If no duty exists there can be no negligence. Ambrogini v. Todd (1982), 197 Mont. 111, 118, 642 P.2d 1013, 1017, citing Prosser on the Law of Torts § 30; Green v. Haegele (1979), 182 Mont. 155, 158, 595 P.2d 1159, 1161. No duty on the part of the State lies here because of the federal government's usurpation of the Montana Safety Act when Congress passed OSHA in 1970. Congress declared its role in 29 U.S.C. § 651 as being "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . " by creating occupational health and safety standards, establishing an enforcement program, and providing appropriate reporting procedures. Subsection 11 of 29 U.S.C. § 651 allows states to assume administration

6

of workers' safety programs if they submit plans approved by the Department of Labor.

State laws dealing with workers' safety are preempted once OSHA enacts similar standards. New Jersey State Chamber of Commerce v. Hughey (3rd. Cir. 1985), 774 F.2d 587, 592. In that case, the court refused to hold that OSHA preempted all of New Jersey's environmental protection laws since the Secretary of Labor's preemptive authority applies only to state occupational safety and health laws. Chamber of Commerce, 774 F.2d at 593. OSHA itself provides the Secretary of Labor and his agents with the authority to enter any factory, construction site or other work place to inspect and investigate machinery and working conditions. Such inspections are sanctioned under 29 U.S.C. § 657. See, 61 Am.Jur.2d Plant and Job Safety § 62 (1981). Since the federal legislation itself provides such inspection authority, it makes no difference whether standards for inspection have been approved under 29 U.S.C. § 655. In Ohio Manufacturers' Association v. City of Akron (6th Cir. 1986), 801 F.2d 824, the court interpreted the legislative history of OSHA. It determined that OSHA was intended to establish a national standard, which would be needed to insure that all states would at least meet certain minimum work safety requirements. To that degree, the court held that state workers' safety laws were preempted expressly. Ohio Manufacturers' Association, 801 F.2d at 831. It also concluded that OSHA standards on communication of hazards, 29 C.F.R. § 1910, impliedly preempted a city ordinance that regulated the presence of hazardous substances in the work place. Ohio Manufacturers' Association, 801 F.2d at 834. That court ruled that OSHA's desire to achieve uniformity would aid in the enforcement of, and compliance with, its standards.

7

The reasoning employed by the Sixth Circuit Court of Appeals in Ohio Manufacturers' Association is sound and is applicable to the question before this Court. Thornock must persuade this Court that federal powers granted in OSHA do not relieve the State of its burden to inspect dangerous work sites. As we have noted previously he bases that argument on the fact that OSHA expressly relieves the State of its right to set standards and to enforce standards, but fails to expressly relieve the State of its duty to inspect. Such an argument fails. Congress has stated expressly that formulation and enforcement of work place safety will be a prerogative of OSHA. The power to inspect the work place is part and parcel of the enforcement of standards. Without inspections, the governing agency has no grounds for enforcement. Similarly, without enforcement powers, which Thornock concedes the State no longer has, inspection privileges are meaningless.

Congress may preempt state laws in either of two manners. The first occurs when Congress manifests an intent to occupy the field; the second occurs when Congress passes federal legislation not intended to occupy the field. In that case, any contradictory state laws must yield to the federal legislation. Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission (1983), 461 U.S. 190, 203-04, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752, 765; State ex rel. Nepstad v. Danielson (1967), 149 Mont. 438, 440, 427 P.2d 689, 691. The first of these scenarios controls this case.

It is plain from reading the Occupational Safety and Health Act that Congress intended to occupy the field of assuring worker safety. Congress accomplished this by setting minimum federal standards that all employers must meet. Thornock's argument that Congress did not occupy the field because it expressly included provisions in OSHA by

8

which the various states could resume workers safety programs is not persuasive. In order to regain the right to set and enforce work safety rules, a state must submit to the Secretary of Labor a plan that is "at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 655 . . . " 29 U.S.C. § 667(c)(2). So while states may choose to exercise work safety programs, they may do so only on the federal government's terms. This field has been occupied by federal law; as such we need not concern ourselves with whether § 50-71-321, MCA, is or is not contrary to OSHA. Such an analysis would be required only if the field had not been occupied by the federal government but one party claimed state law and federal law clashed.

The doctrine of preemption stems from Article VI, cl. 2 of the United States Constitution, which states that the United States Constitution and the laws of the United States "shall be the Supreme Law of the Land . . . " Congress' intent to preempt state law may be either explicit in the statute or implicit in its structure and purpose. Marshall v. Burlington Northern, Inc. (9th Cir. 1983), 720 F.2d 1149, 1152. In Jones v. Rath Packing Co. (1977), 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604, the United States Supreme Court ruled that when Congress has "unmistakably ordained" that its enactments alone will regulate a portion of commerce, any state laws regarding that aspect must fall. Jones, 430 U.S. at 525-26, 97 S.Ct. at 1310, 51 L.Ed.2d at 614. The interpretation and application of state law, vis-a-vis federal law, is as crucial in this determination as is the actual wording of the competing acts. Jones, 430 U.S. at 526, 97 S.Ct. at 1310, 51 L.Ed.2d at 614.

Montana law recognizes that it is not the wording that determines if a state law has been preempted by federal action. "It is well settled that the question of whether a

9

statute is invalid under the supremacy clause depends upon the intent of Congress." Mountain States Telephone & Telegraph Co. v. Commissioner of Labor and Industry (1979), 187 Mont. 22, 41, 608 P.2d 1047, 1057, appeal dismissed 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754. As we have noted earlier Congress stated that OSHA was meant to assure every working person "safe and healthful working conditions." 29 U.S.C. § 651(b). Congress also has stated a desire to return the function of protecting workers' safety to the various states as soon as the state submits a plan at least as stringent as OSHA to the federal government for approval. 29 U.S.C. § 667(b). Montana has completed no such state plan. This combination of effective federal standards and State acquiescence to those standards despite the fact that the State could, if it wanted to, recapture those powers demonstrates that the federal government has occupied the field. Thus, Congress has preempted the Montana Safety Act.

As his second issue, Thornock claims OSHA falls short of the test for preemption established in Silkwood, supra. In Silkwood, an award of punitive damages under state law for the decedent's contamination by plutonium was not preempted even though Congress had passed the Atomic Energy Act in an effort "to encourage widespread participation in the development and utilization of atomic energy for peaceful purposes." Silkwood, 464 U.S. at 257, 104 S.Ct. at 626, 78 L.Ed.2d at 458, citing 42 U.S.C. § 2013(d). The Supreme Court also noted that punitive damages would not be contrary to the federal act since 42 U.S.C. § 2013(d) said such development and utilization of atomic power should be done "consistent with the health and safety of the public." The award of punitive damages did not contravene federal purposes. Silkwood, 464 U.S. at 257, 104 S.Ct. at 626, 78 L.Ed.2d at 458.

10

Such rationale does not comport well with the circumstances of this case. In 29 U.S.C. § 657, the Secretary of Labor is provided with means by which he may enter and inspect a work site. Subsection (d) says very specifically that any such inspections by federal agencies or by proper state agencies shall not be unnecessarily burdensome on the employer

(d) Obtaining of Information

> Any information obtained by the Secretary, [of Labor] the Secretary of Health and Human Services, or a State agency under this chapter shall be obtained with a minimum burden upon employers, especially those operating small businesses. Unnecessary duplication of efforts in obtaining information shall be reduced to the maximum extent feasible. (Emphasis added.)

The intent of Congress is clear. It has created federal law by which to insure the safety of the work place. It has established an agency to set standards and to enforce them. This has been done to create a uniform minimal level of safety. Thus, state efforts to set and enforce standards have been superseded. In addition, Congress has realized that a plethora of inspectors from all sorts of agencies is not needed, and ordered that such inspections not be unduly repetitious. The State of Montana, with no standards of its own or any enforcement powers, decided not to inspect dangerous work places. It concluded that OSHA had assumed that responsibility.

As a last-ditch argument, Thornock cites 29 U.S.C. § 653(b)(4) and argues that it exempts his cause of action from OSHA preemption. That subsection reads:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any

11

other manner *the common law or statutory rights, duties, or liabilities of employers and employees* under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment. (Emphasis added.)

This argument has little merit. In United Steel Workers of America v. Marshall (D.C. Cir. 1980), 647 F.2d 1189, cert. denied National Association of Recycling Industries, Inc. v. Secretary of Labor, 453 U.S. 913, 101 S.Ct. 3149, 69 L.Ed.2d 997, an issue was whether the monitoring of blood-lead levels and the payment of benefits to those that exhibited high blood-lead levels was an attempt to federalize workers' compensation laws. The Circuit Court termed 29 U.S.C. § 653(b)(4) as "vague and ambiguous on its face," and further stated that OSHA's legislative history reveals "essentially nothing" about the section. United Steel Workers, 647 F.2d at 1234, see also n. 70. It is true that the general rule of statutory construction in Montana is that a court should interpret the statute so as to allow the intent of the legislature to control if possible. Darby Spar, Ltd. v. Department of Revenue (Mont. 1985), 705 P.2d 111, 113, 42 St.Rep. 1262, 1264. In interpreting an act of Congress, a court may not depart from the statute's clear meaning. Adams v. Morton (9th Cir. 1978), 581 F.2d 1314, 1320, cert. denied sub nom Gros Ventre Tribe v. United States (1978), 440 U.S. 958, 99 S.Ct. 1498, 59 L.Ed.2d 771. It can be clearly determined from the language of this section that Congress did not mean to interfere with the various states' workers' compensation schemes. Beyond that, Congress' intention is obscure. We conclude that Thornock's cause of action is not exempted from OSHA.

After a careful review of the record and a weighing of the arguments we agree that the State's duty to inspect had been superseded by the federal act. Thus, the fact that the

12

State had not inspected the sawmill at which Thornock was injured does not make the State negligent for the most important element of negligence--duty--had been assumed by the federal government. We affirm the District Court's order granting summary judgment for the State.

_____
Justice

We concur:

_____
Chief Justice

_____

_____ ,

_____

_____

_____
Justices

13

Mr. Justice William E. Hunt, Sr., dissenting:


In this Opinion, as in Thornock v. Pack River Management Co. (1987), 740 P.2d 149, the majority posits an argument which denies Larry Thornock any third party action recovery for the tragic amputation of his left arm. I disagree with the result of the majority opinion and would reverse the judgment of the District Court.

_____
Justice


I concur with the foregoing dissent of Mr. Justice William E. Hunt, Sr.

_____
Justice