No. 87-363

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

BRUCE A. YOUNG and SHERRI D. YOUNG,
Husband and Wife; LEO B. EVANS and
LONA LEE EVANS, husband and wife, and
RUTH E. PALMER,
                Plaintiffs and Respondents.
        -vs-

FLATHEAD COUNTY, a Body Corporate,
                Defendant and Appellant,
        and
FLATHEAD COUNTY BOARD OF COMMISSIONERS,
a Body Politic; NAKUL S. VERMA, FLATHEAD
COUNTY ZONING ADMINISTRATOR,
                Defendants.
        and
ALBERT SEELEY,
                Defendant-Intervenor, Plaintiff
                Cross-Claimant and Respondent,
        and
HENRY OLDENBURG,
                Defendant and Intervenor.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
            In and for the County of Flathead,
            The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:
        For Appellant:
                Ted Lympus argued, County Attorney, and Jonathan B
                Smith argued, Deputy County Atty., Kalispell, Montana

        For Respondent:
                Lawrence F. Daly argued, Missoula, Montana

---

Submitted: April 26, 1988
  Decided: June 13, 1988

Filed:  JUN 1 3 1988  *Ethel M. Harrison*

---

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal of findings of fact, conclusions of law and judgment of the Eleventh Judicial District Court, Flathead County, in favor of defendants-intervenors Albert Seeley and Henry Oldenburg (Developers) against defendant-appellant, Flathead County (County). The findings and conclusions were adopted on April 22, 1982 and amended on July 12, 1982. The District Court entertained the damage claim and entered findings and conclusions on March 24, 1987 against the County in excess of two million dollars. A motion to alter the judgment, or in the alternative to grant Flathead County a new trial was denied June 2, 1987. The County appeals. We reverse and remand for further proceedings.

The following issues have been presented for our review:

1. Did the County's August 13, 1981, change of position on the requirement of subdivision review for condominium projects give rise to a claim for damages by Developers?

2. Was the County's change of position the proximate or legal cause of Developers' damages?

3. Should the County have been entitled to a new trial on grounds the District Court erred in not admitting evidence on the issue of proximate cause?

4. Whether Developers' reliance on the County's initial position of no requirement of subdivision review of condominium projects was supported by substantial evidence and, if so, whether that reliance was reasonable?

5. Is the County immune from damages under § 2-9-111, MCA?

6. Did the damages awarded by the District Court exceed the statutory limit on governmental liability?

Reversal of this case is based on the first four issues and we therefore will not address issues five and six.

This case arises from a failed condominium development on the west shore of Flathead Lake. In the early 1980s, Developers approached the County and proposed construction of the Caroline Point Estates and Yacht Club condominiums on 28 acres of unzoned property. Prior to construction, Developers requested the parcel be zoned as a planned unit development (PUD) in order to construct the projected 84 units. If zoned R-2 (rural residential), the area could only hold 56 units which would not be financially viable for Developers.

Deputy County Attorney Charles Kuether (Kuether), and Wil Aiken of the Montana Department of Health and Environmental Sciences (DHES), informed Developers the project was not a "subdivision" under the Subdivision Platting Act, Title 76, Chap. 3 and 4, MCA, and therefore would not be subject to subdivision review.

County Sanitarian Tom Cowan (Cowan) informed Developers on September 19, 1980, that sanitary review would not be initiated for "several months." Developers contend Cowan informed them that the basic concept for sewage treatment was approved. However, on December 18, 1980, Developers' attorney received a letter from DHES indicating that DHES considered the project a subdivision, and therefore subject to review. Developers were made aware of this letter. On December 23, 1980, the Board of Commissioners of Flathead County adopted Resolution 414 which zoned the property PUD. Developers commenced construction in late December, 1980. On January 6, 1981, and January 19, 1981, Ray Lee, one of Developers' partners, received letters from DHES requesting an application for sanitary review be filed with the

3

Subdivision Bureau under the Sanitation in Subdivisions Act. The second letter stated continuing construction would violate the Act. A notice of violation was subsequently issued as Developers did not slow construction.

The County claims Lee also met with Ed Casne of DHES and was told the project was a subdivision. Developers claim they received additional assurances at this time from Kuether. Relying on these assurances, Developers claim they finalized their ownership interests in the property in January of 1981. At a February 11, 1981, meeting, Kuether stated the County disagreed with the DHES designation and the issue was likely to be decided through litigation. On February 13, 1981, the Commissioners re-approved the PUD designation in Resolution No. 421. On this same day, Dr. John Drynan, director of DHES, requested an opinion from the Montana Attorney General as to whether condominium developments are subdivisions subject to review.

On March 6, 1981, DHES conducted a hearing on its notice of violation earlier issued to Developers. The hearing resulted in a stipulation entered into between DHES and Developers which allowed construction of four model units, to be used to promote "pre-sales," a combination recreation center/caretaker's residence and a marina. Developers were also allowed to maintain a sales office on the project so that construction and production schedules were not halted. DHES issued findings of fact and conclusions of law April 27, 1981 that stated since Developers relied on previous assurances, equity demanded they be allowed to continue with the above-stated limited construction.

Opponents of the development filed a complaint on March 13, 1981, alleging the condominium project was a subdivision subject to review. Construction continued on the units

allowed by the stipulation and Developers claim they planned to "presell" 11 of the next 15 units before further construction would occur.

By June of 1981, Developers invested over $900,000 in the project. Because additional operating capital was needed until pre-sales began to generate revenue, Developers borrowed $200,000 from First Interstate Bank of Kalispell and an additional $325,000 from a Canadian bank. Formal application for sanitary approval purposes was sent to DHES on June 24, 1981. On June 30, and July 19, 1981, Developers met with the County Sanitarian who informed them no problems were yet encountered.

The Attorney General Opinion, 39 A.G.Op., No. 28, was issued July 28, 1981, and held condominium projects were subdivisions subject to review. In this opinion, the Attorney General relied on the intention of the Legislature that a broad definition of "condominium" was intended when the Sanitation in Subdivisions Act definitions were adopted in 1973. The Attorney General stated:

> It is the public policy of this state to extend present laws controlling water supply, sewage disposal, and solid waste disposal to include individual wells affected by adjoining sewage disposal and individual sewage systems to protect the quality and potability of water for public water supplies and domestic uses and to protect the quality of water for other beneficial uses, including uses relating to agriculture, industry, recreation, and wildlife.

> This expression of legislative concern regarding water supply, sewage disposal, and solid waste disposal logically includes concern for the impact of the high density development that is characteristic of condominiums.

On August 13, 1981, the County Attorney wrote Developers' counsel and advised him to cease project construction until subdivision approval was attained. The letter imposed restrictions on further sales. By August 13, 1981, cost on the construction project had reached $1,065,578.

Developers continued to attempt to secure sanitation approval from the State and County and the State and County continued their review of the project. After the influx of money ceased, Developers were forced to abandon the project and absorb significant losses. Developers could not secure further financial support and because they purchased the property on an installment contract, were forced to default.

In response to the complaint filed by project opponents, Developers, specifically Seeley as court-authorized intervenor, filed a "Cross-Claim for Declaratory Relief against defendant Flathead County" on September 24, 1981. The cross-claim contained seven counts. Count III sought to estop the County from enforcing the subdivision review requirement. It alleged the County Attorney interpreted the regulations requiring subdivision review as being inapplicable to the development and Developers justifiably relied and acted upon these interpretations. Paragraph V of Count III states "[t]hat in August of 1981, the county, through the office of the county attorney, arbitrarily, capriciously and without justification" prohibited further construction resulting in financial damage. The cross-claim concluded with a prayer for declaration that the project was exempt from subdivision review and that Developers are "entitled to damages in an amount to be shown at trial."

The District Court addressed motions for summary judgment and the cross-claims in two phases. Pursuant to

6

stipulations setting forth agreed facts and issues, on April 22, 1982, the District Court entered findings of fact and conclusions which were amended on July 12, 1982 and September 30, 1986. Hearings on the second issue of damages were held in October, 1984 and concluded on April 26, 1985. These hearings resulted in findings of fact and conclusions of law entered on March 24, 1987 and supplemented on June 2, 1987, along with a judgment on April 8, 1987 in favor of the Developers. The final order, issued June 2, 1987, was filed over six years after the complaint was filed.

On appeal, the findings of the trial court are presumed to be correct if supported by substantial evidence and we refuse to substitute our judgment for that of the District Court where, as here, the District Court is acting as the trier of fact and there is substantial evidence to support its decision. Department of Revenue v. New Life Fellowship of Montana, Inc. (Mont. 1985), 703 P.2d 860, 862, 42 St.Rep. 401. We will not reverse the District Court absent a showing that its determinations were clearly erroneous. Rule 52(a), M.R.Civ.P.

The first three issues presented for our review are very similar and we will deal with them jointly as we find the District Court erred in its determination of proximate cause and in its disallowance of evidence regarding this issue.

Developers are entitled to recover damages if it can be shown the alleged negligent representations of the County caused the damages and injures suffered by Developers. Generally, negligence requires existence of a duty, breach of that duty and harm caused by that breach. R.H. Schwartz Const. Specialties, Inc. v. Hanrahan (1983), 207 Mont. 105, 107, 672 P.2d 1116, 1117. In this case, the causation

7

question was not adequately satisfied by Developers to allow for recovery of damages.

In the District Court's findings of fact and conclusions of law dated March 24, 1987, it found that as of August 13, 1981, the necessary sanitary approval had not been granted by either DHES or the Flathead county sanitarian. The County argues excluded evidence would have shown it had further become increasingly apparent that the project would not be able to support the 84 proposed units. The PUD re-zoning plan that the County had worked out with Developers was merely done so that Developers could construct the 84-unit rather than a 56-unit, project. The District Court stated "the stop order issued by the County in the midst of construction was not required by considerations of health or safety." It went on to find that the stop order's only effect was to require "repetitive and redundant" procedures that halted the project construction.

Developers complied with the County order. The District Court made a finding that after the order of August 13, 1981, the project lost favor with county officials. The county sanitarian decided he would not approve a sewage disposal system for 84 units and as a result of county officials' conflicting representations, developers had no way to service the underlying debt accumulated in financing the project. The District Court, in its findings and conclusions of March 24, 1987, made a specific conclusion that the County proximately caused Developers' damages.

The County argues, and we agree, that the District Court erred in this finding and in disallowing evidence pertaining to the proximate cause issue after August 13, 1981. This evidence was contained in a number of County exhibits that demonstrated Developers continued to work on

8

the project well beyond August 13, 1981.    Developers sold the project over a year later.

The county sanitarian testified that the sewer system review process was not affected by the letter of August 13, 1981 and that even after this date Developers attempted to gain approval in the same manner as before.    The County claims one of the exhibits was a letter dated October 9, 1981 to Casne, Chief of the DHES Subdivision Bureau from the engineering firm of Thomas, Dean and Hoskins, stating the realization that the 84-unit plan was not feasible.  Four of the exhibits allegedly dealt with the hiring of an independent expert by the DHES to study the project in light of two conflicting reports previously received by the DHES. It is argued that not only did these exhibits show that it was unlikely the project would ever receive approval, they also demonstrated DHES' effort to analyze Developers' proposal and Developers' continued attempt to salvage the project.

The County contends a letter of January 13, 1982, which was not allowed into evidence, demonstrated Developers' continuing effort to revise the plan to receive sewer system approval.    An off-site treatment system was another design consideration proposed and letters in regard to this attempt were also not allowed.    Other exhibits were offered but disallowed that further demonstrated the continuing attempt, even into 1983 and 1984, to gain approval for a sewage system.

Lack of approval of the sewage system was fatal to the project in addition to any subdivision review requirement. These exhibits should have been allowed and considered, failure to admit such evidence was error.

Developers briefly argue "but for" the representations by the County, they would never have proceeded with the enormous financial project and therefore no damage would have

occurred. As a consequence, Developers claim, all other causes, especially those after August 13, 1981, are irrelevant because financial commitment would not have occurred. We disagree.

Liability, in any cause of action, attaches if the plaintiff can prove first that defendant's act is a cause in fact of injury and then that the injury is the direct or indirect result, proximately caused by the negligent act. Causation in fact has been determined by the use of the "but for" test, argued by Developers, and in rare circumstances under a substantial factor examination. Prosser and Keeton, The Law of Torts, § 41, pp. 264-268 (5th ed., 1984). In Montana, the distinction between causation in fact and proximate cause, now occasionally referred to as legal cause, has not generally been made. See, Rudeck v. Wright (Mont. 1985), 709 P.2d 621, 638, 42 St.Rep. 1380; Kyriss v. State (Mont. 1985), 707 P.2d 5, 8, 42 St.Rep. 1487.

Under causation in fact, the "but for" test has been defined as but for defendant's conduct, the event would not have occurred, or, conversely, defendant's conduct is not the cause of the event, if the event would have occurred without the conduct. Rudeck, supra, 709 P.2d at 628. As an uncommon alternative to the "but for" test, the "substantial factor" test has been designed to deal with problems where application of the "but for" test would allow each of a number of defendants to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result. Judeman v. Montana Deaconess Medical Center (Mont. 1986), 726 P.2d 301, 305, 43 St.Rep. 1747.

In the case at bar, Developers present a reasonable argument that but for the representations of the County they would not have proceeded with the project. They claim the

second event, development of Caroline Point Estates, would not have occurred but for the first event, the representations of the County.

However, the representations did not "proximately cause" the damages in this case. In Montana, proximate cause is one which in a natural and continuous sequence, unbroken by any new, independent cause, produces injury, and without which the injury would not have occurred. Jimison v. U.S. (D.C. Mont. 1967), 267 F.Supp. 674, aff. 427 F.2d 1133; Sztaba v. Great Northern Railway Co. (1966), 147 Mont. 185, 195-196, 411 P.2d 379, 385. This definition of proximate cause incorporates the "but for" definition in the words of the last clause "[a]nd without which the injury would not have occurred." It is from this wording that the distinction between cause in fact and proximate, or legal, cause has become clouded. Nonetheless, prior to analyzing proximate cause, a claimant must satisfy cause in fact. Developers in this case could satisfy the "but for" analysis but could not show proximate cause. Proximate cause clearly must be established to create liability in a negligent defendant. Demaree v. Safeway Stores, Inc. (1973), 162 Mont. 47, 54, 508 P.2d 570, 575; see also, Dvorak v. Matador Services, Inc. (Mont. 1986), 727 P.2d 1306, 1311, 43 St.Rep. 1562, 1568-1569 (where it was determined defendant's conduct must be proven as the proximate cause of the claimant's injures to show negligence in strict liability). Therefore, Developers had to prove an uninterrupted chain of events from the alleged negligent act of the County, e.g., erroneous relied-upon representations and change of position, to the injuries and damage suffered. Further, this chain of events could not be broken by any new, independent cause, such as economic factors or failure to secure sanitary approval. This burden has not been met by Developers as is apparent from the

11

evidence which was erroneously excluded by the District Court.

Further, since other factors -- the economy, failure to secure additional financing, and especially the inability to secure approval of the sewer system -- had an impact on the resulting damage, Developers cannot claim the County's representations alone "proximately caused" the damage. Where more than one possible cause of damage appears, the plaintiff must eliminate causes other than those for which the defendant is responsible. Valley Inland Pacific Constructors, Inc. v. Clackamas Water District (Or. 1979), 603 P.2d 1381. Developers' failure to separate the causes and damage bars them from arguing proximate cause is satisfied in this case. Numerous interruptions in the chain of events occurred that could be considered the injury causing damage.

In support, the County directs this Court's attention to the testimony of Albert Seeley that no pre-sales were to be closed prior to complete approval of the units' sanitary systems. Seeley further admitted that sanitary systems approval for the 84 units was never received from the County nor DHES.

Regardless of whether the County made any representations that condominiums were or were not subject to subdivision review, the fact is that it is likely the project would not have been completed because sanitary approval could not be secured. The County also points out that in addition to the above mentioned factors, the testimony of Developers' accountant was that a number of occurrences combined to cause the demise of the development.

We note at this juncture that this argument takes us into the fourth issue of whether reliance on the County's initial position was reasonable. The District Court stated

in its conclusions of law of March 24, 1987, that "developers justifiably relied upon the representations of Flathead County that the Caroline Point condominium project was not subject to the Flathead County Subdivision Regulations." Further, the court concluded the order prohibiting further construction and sales "was the proximate cause of injury to the developers entitling the developers to recover from the County as damages their net out-of-pocket loss which reasonably resulted from their reliance upon previous County representations." As previously set forth, the District Court abused its discretion in its determination of proximate cause of injury in this case. We also hold that the conclusion that Developers justifiably relied upon the representations was error.

Ground breaking on the project began December 23, 1980 after the County Commissioners initially passed the PUD required to allow for increased density. Of importance, however, is the letter that was sent by DHES on December 18, 1980 informing Developers that DHES considered the project a subdivision subject to review. Also, a review of the statutes in effect at the time shows that "subdivision" did include condominiums. The following statutes, state and local regulation of subdivisions, provide:

> § 76-4-102(7), MCA (1979) -- "Subdivision" means a division of land or land so divided which creates one or more parcels containing less than 20 acres, exclusive of public roadways, in order that the title to or possession of the parcels may be sold, rented, leased, or otherwise conveyed and includes any resubdivision and any condominium or area, regardless of size, which provides permanent multiple space for recreational vehicles or mobile homes.

13

§ 76-3-103(15), MCA (1979) -- "Subdivision" means a division of land or land so divided which creates one or more parcels containing less than 20 acres, exclusive of public roadways, in order that the title to or possession of the parcels may be sold, rented, leased, or otherwise conveyed and shall include any resubdivision and shall further include any condominium or area, regardless of its size, which provides or will provide multiple space for recreational camping vehicles or mobile homes. (Emphasis added.)

Developers were represented by counsel during the entire period of time at issue. In light of the existence of these statutes and the letter that was issued from DHES, the question of the reasonableness of the Developers' reliance is paramount in determination of this case.

Developers contend that their reliance was reasonable because the County, through its attorney, "promised" it would litigate its determination that condominiums were not subject to subdivision review. However, agents of the DHES, specifically Will Aiken, had also advised Developers that the condominium development would not be subject to subdivision review.

The County appropriately points out that Developers were relying on an interpretation of law, an opinion, that the condominiums would not be subject to subdivision review. The County Attorney's office maintained no confidential or professional relationship with Developers in this case. Therefore, the County's opinion -- in light of the State's determination that subdivision review would be required set out in the letter of December 18, 1980; the fact that Developers were represented by their own counsel; the existence of the above-mentioned statutes and the actual

14

opposition to the lack of subdivision review that was expressed by opponents of the project who ultimately filed this suit -- was unreasonably relied upon by Developers.

We reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices