No. 88-518

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

KITCHEN KRAFTERS, INC.,
        Plaintiff and Respondent,
   -vs-
EASTSIDE BANK OF MONTANA,
        Defendant, Counterclaimant
        and Appellant,

---

EASTSIDE BANK OF MONTANA,
        Third Party Plaintiff,
   -vs-
ROBERT W. SCHELL; MARY ANN CLARY, formerly, MARY ANN
SCHELL, former wife of ROBERT W.SCHELL; STATE OF
MONTANA, EMPLOYMENT SECURITY DIVISION, DEPARTMENT OF
LABOR & INDUSTRY, et al.,
        Third Party Defendants.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Ward E. Taleff argued; Alexander, Baucus & Linnell,
          Great Falls, Montana

      For Respondent:

          Maxon Davis argued; Cure, Borer & Davis, Great Falls,
          Montana

---

                      Submitted: December 12, 1989
                        Decided: March 20, 1990

Filed:

                               Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant, Eastside Bank of Montana (Bank) appeals from a jury verdict rendered in the Eighth Judicial District, Cascade County in favor of the plaintiff Kitchen Krafters, Inc. (Kitchen Krafters). We reverse.

The issues on appeal are:

1) Whether Kitchen Krafters' claims are barred by the statutes of limitations.

2) Whether Kitchen Krafters claims are supported by substantial evidence.

3) Whether the District Court erred in instructing the jury on causation.

The facts of this case are complicated. In early 1973, Arnold Wirtz (Wirtz) and Don Morris (Morris) of Kitchen Krafters contacted Robert Schell (Schell) about purchasing commercial property in Great Falls, Montana located on 25th Street North. At the initial meeting, a price of $40,000 was settled upon. Approximately one week later, Wirtz and Morris were contacted by Bruce Miller (Miller) of the Bank to review a draft of a proposed contract for deed and escrow agreement naming the Bank as escrow on the property. The contract for deed had been prepared by Schell's attorney. Morris and Wirtz were unrepresented.

At the meeting, Wirtz and Morris learned that Schell and the Bank had negotiated a separate transaction concerning the property. The Bank loaned Schell $30,000 which was secured by a trust indenture on the property. The escrow agreement specified that

1

payments made by Kitchen Krafters would be distributed to the Bank as payments on Schell's underlying trust indenture with the balance going to Schell. The exact wording is as follows:

> Special instructions, if any, in addition to the foregoing: In the event Buyers prepay an additional $5,000.00 on or before July 1, 1973, upon such payment there shall be credited against principal an additional $2,000.00. to-wit: upon payment of additional $5,000.00 principal on or before July 1, 1973, Buyers shall be credited with $7,000.00 payment; if said $5,000.00 payment made on or before July 1, 1973, this special instruction becomes automatically void and cancelled.
>
> 3. Payments made hereunder are to be distributed as follows:
>
> Applied first to monthly payments under Trust Indenture dated March 29, 1973, running to Eastside Bank of Montana wherein Sellers are Grantors; balance of payments remitted to Sellers.
>
> 4. Terms of prepayment privilege are as follows: (If no such privilege, so state)
>
> Full prepayment privileges, interest to cease on amounts prepaid; but prepayment shall not excuse subsequent monthly payments.

On July 9, 1973, Kitchen Krafters exercised this option and made the prepayment. Although the payment was made beyond the July 1 deadline contained in the escrow agreement, the parties executed a waiver and authorized the Bank to accept the payment which was applied to the contract principal. The Bank did not apply this payment to Schell's note secured by the trust indenture, however. Instead the $5,000 was given to Schell who never applied the money to his debt. Kitchen Krafters was never advised that this payment was not applied to Schell's note.

As a result of the prepayment, the Bank sent Kitchen Krafters

2

a revised amortization schedule which shortened the number of monthly payments from 180 to 125. The amount due monthly remained the same. Schell's repayment schedule under his trust indenture remained the same. As a result, Kitchen Krafters was amortizing its contract for deed at a much faster rate than Schell's debt on his trust indenture.

Finally, in either 1980 or 1981, the president of the Bank called Kitchen Krafters and notified them that because the prepayment had not been applied to Schell's trust indenture, the property would not be fully released until that underlying obligation was paid. Kitchen Krafters then contacted Schell who confirmed that he had not applied the prepayment to the Bank's note. He also stated that he was financially unable to meet the obligation. In 1982 Schell filed a petition in bankruptcy that was subsequently dismissed by the bankruptcy court.

Subsequently, Kitchen Krafters, experienced a number of setbacks. In September of 1981 Wirtz, who managed the sales and business end of Kitchen Krafters, quit and went into direct competition. Kitchen Krafters continued to meet its obligations under the contract for deed. On December 23, 1982, Kitchen Krafters attempted to pay the Bank, as escrow, the balance due on the contract. This final payment was contingent upon a demand made by Kitchen Krafters that the trust indenture be released. Under this condition the Bank refused to accept the payment and the trust indenture was not released.

Kitchen Krafters filed suit against the Bank on February 8,

3

1983 seeking damages for breach of the covenant of good faith and fair dealing, constructive fraud, failure to disclose and negligent misrepresentation. Both parties amended their pleadings on March 18, 1985. On April 4, 1985, the Bank filed a revised amended answer, counterclaim and a third-party complaint seeking to foreclose the trust indenture.

Trial commenced on June 20, 1988. The Bank's motion for summary judgment, based upon the statute of limitations defense, was denied as was its motion for a directed verdict. On June 28, 1988, the jury returned a verdict in favor of Kitchen Krafters for $285,000. The District Court entered judgment accordingly and this appeal followed.

I

The Bank maintains that each of Kitchen Krafters claims are barred by the statute of limitations. As stated earlier, Kitchen Krafters brought its lawsuit, which is based in tort, alleging four causes of action -- breach of the covenant of good faith and fair dealing, constructive fraud, negligent misrepresentation and breach of a duty to disclose. We hold that there is not substantial evidence to support the allegation of constructive fraud and negligent misrepresentation. This holding will be discussed in greater detail later in this opinion. However, as a result of this conclusion we will only analyze the statute of limitations issue in regard to the remaining two causes.

Each side presents differing theories on how the statute of limitations should be applied. The Bank relies upon the discovery

4

doctrine to argue that Kitchen Krafters' claims are barred. According to this theory, the applicable statute of limitations begins to run once the plaintiff knew or should have known that a cause of action exists. According to the Bank, a dispute exists as to when Kitchen Krafters discovered the discrepancy between the amortization on the trust indenture and the contract for deed. The Bank maintains that it notified Kitchen Krafters of the discrepancy in January of 1980. Kitchen Krafters, on the other hand, maintains that it was notified a year later, in January of 1981.

The dispute, it is argued, should have been submitted to the jury. If the 1980 date is determined to be the date of discovery then all of Kitchen Krafters' claims would be time barred. The allegations of breach of the implied covenant of good faith and fair dealing and the duty of disclosure are both general tort claims which are subject to a three year limitation. See § 27-2-204(1), MCA; Tynes v. Bankers Life Co. (1986), 224 Mont. 350, 730 P.2d 1115. Therefore, using the Bank's analysis, because Kitchen Krafters' claims were not brought until February of 1983, each of its claims would be barred if the 1980 date of discovery is accepted.

Kitchen Krafters, for its part, argues that the discovery doctrine is inapplicable to the case. Instead, they maintain that their cause of action was brought as soon as they could validly assert their claim. According to their argument, they could not bring a lawsuit until their cause of action fully accrued. In

order for the cause of action to accrue, they must have sustained an injury. They did not sustain an injury until Eastside refused to release the trust indenture. This refusal occurred in December of 1982, and Kitchen Krafters filed its lawsuit in February of 1983. Therefore, they filed their cause of action well within the statute of limitations.

We agree with Kitchen Krafters' argument insofar as it is applied to the claim of breach of the duty to disclose. However, we disagree with this argument as applied to the bad faith claim.

Section 27-2-102, MCA, states:

(1) For purposes of statues relating to the time within which an action must be commenced:

(a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete and a court or other agency is authorized to accept jurisdiction of the action.

. . .

(2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim of cause of action, or its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

As the language of this statute makes clear, the statute of limitations does not begin to run until all elements of a cause of action are in existence. For example, in a negligence action the plaintiff must prove four elements:

1) Existence of a duty

2) Breach of the duty

3) Causation

4) Damages.

Thornock v. State, 229 Mont. 67, 745 P.2d 324 (1987). If these elements are not in existence, the plaintiff could not successfully bring a cause of action based upon negligence. Therefore, although one may be able to establish the existence and breach of a duty, he cannot successfully assert his cause of action until he has sustained an injury, Heckaman v. Northern Pacific Railroad (1933), 93 Mont. 363, 20 P.2d 258.

Kitchen Krafters' claim based upon breach of the duty to disclose is based upon the fiduciary relationship between it and the Bank created by the escrow agreement. As an escrow agent, the Bank owed a fiduciary duty to Kitchen Krafters. 3 C.J.S. Agency § 271. This relationship conferred upon Eastside the duty to make full disclosure of all material facts relevant to the agency. 3 Am.Jur.2d, Agency § 211. Kitchen Krafters maintains that under this duty the Bank should have notified them of the problems surrounding the financial arrangement.

Successful assertion of a cause based upon a breach of a fiduciary duty, like a negligence action requires the plaintiff to prove that he has suffered an injury. 3 Am.Jur.2d, Agency § 337. No injury occurred until the Bank refused to release the trust indenture. Therefore, Kitchen Krafters' cause of action based upon nondisclosure did not accrue until that time. Kitchen Krafters' claim was filed less than three months following this refusal. It was filed within the applicable statute of limitations.

Kitchen Krafters argues that the cause of action alleging the

7

tort of breach of the implied covenant of good faith and fair dealing is not barred. Similar to the cause of action described above, it bases this argument on the fact that it did not sustain an injury until Eastside refused to release the trust indenture.

Assuming there is a cause of action, we disagree with this argument. Kitchen Krafters theorizes that the breach of the implied covenant occurred when the Bank failed to properly apply the $5,000 prepayment to Schell's trust and when it subsequently failed to disclose this misapplication. Using this theory, it is apparent that the claim of bad faith flowed directly from the Bank's purported breach of contract. Therefore it is necessary to determine when Kitchen Krafters had a right to maintain an action for breach of the escrow agreement.

A breach of contract is a legal wrong independent of actual damage. A failure to show actual damages and the resulting inference that none were sustained does not defeat the cause of action. Sutherland on Damages Vol. I § 11 (3rd Edition 1903). An action for breach of contract, then does not require that the plaintiff sustain any damages. Jacobs Sultan Co. v. Union Mercantile Co. (1895), 17 Mont. 61, 42 P. 109. In light of these principles, it has long been recognized that the statute of limitations runs from the time of the breach and not from the time of injury, or in the absence of fraudulent concealment, from the time of discovery. Williston on Contracts at § 2025C.

The alleged breach of contract, in this case, occurred in 1973, when the Bank purportedly misapplied the $5,000 prepayment.

The statute of limitations began to run at this time. Since the tort of bad faith arose (for the purpose of this discussion we are assuming that the establishment of the tort of the implied covenant of good faith and fair dealing is retroactive to this time period) directly from the terms of the escrow contract, the statute applicable to it began running at the same time the alleged breach of the escrow agreement occurred. We base this conclusion on reasoning of the Supreme Court of Illinois which has held that when a tort arises directly out of a contractual relationship, the statute of limitations commences to run at the time the contract is breached. Stevens v. Obryant (Ill. 1979), 392 N.E.2d 935; West American Ins. Co. v. Sal E. Lobiance & Son Co. Inc. (Ill. 1977), 370 N.E.2d 804. Two reasons are given for this rule:

> First, the breach itself is actionable and it encourages the party to act within [the period of limitations] of an actionable breach rather than to delay until damages increase. The rule also recognizes that plaintiff has chosen to deal with the defendant and that a contract may be stated in terms to minimize losses from defective performance.

Aetna Life and Casualty Co. v. Sal E. Lobiance & Son Co. Inc. (Ill. 1976), 357 N.E.2d 621, 624. This rule is in keeping with the general principles of contract law and the theories behind the covenant of good faith and fair dealing, which is an implied provision contained within certain contracts. If the statute of limitations begins to run at the time of breach of an express contractual term, then for the sake of consistency, we hold that this same general rule should apply equally to implied covenants.

The tort of bad faith is subject to a three year statute.

Tynes v. Bankers Life Co. (1986), 224 Mont. 350, 730 P.2d 1115. As stated earlier, Kitchen Krafters did not file its case until 1983. The cause of action alleging bad faith is, therefore, barred.

## II

We must next determine whether Kitchen Krafters' claims are supported by substantial evidence. We will not reverse the findings of a jury unless they are not supported by substantial evidence. Green v. Wolff (1962), 372 P.2d 140, 427 Mont. 413. Substantial evidence is defined as that evidence that a reasonable mind might accept as adequate to support a conclusion. Although it may be based upon weak and conflicting evidence, in order to rise to the level of substantial evidence it must be greater than trifling or frivolous. Christensen v. Britton (Mont. 1989), ___ P.2d ___, 46 St.Rep. 2223. In short, where a verdict is based upon substantial evidence which from any point of view could have been accepted by the jury as credible, it is binding upon this Court although it may appear inherently weak. Batchoff v. Craney (1946), 119 Mont. 157, 172 P.2d 308.

Four theories of recovery were submitted to the jury--breach of the covenant of good faith and fair dealing, constructive fraud, negligent misrepresentation, and breach of the duty to disclose. We have found that the bad faith claim is barred by the statute of limitations. Therefore, we need only consider the remaining three theories relative to substantial evidence. We begin our analysis with the constructive fraud claim.

10

In order to sustain a claim of constructive fraud, Kitchen Krafters must present substantial evidence to prove that the Bank committed a "breach of duty which without fraudulent intent gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him." Section 28-2-406, MCA.

There is no evidence presented by Kitchen Krafters supporting the conclusion that the Bank's actions resulted in any advantage to "it or anyone claiming under it." The claims against the Bank are based upon the allegation that it wrongfully gave Kitchen Krafter $5,000 prepayment to Schell rather than applying it to the trust indenture. The Bank incurred no advantage through this act. Any benefit was gained by Schell, who was merely a party to the escrow. He could not be regarded as one "claiming under" the Bank. We therefore hold that the jury's determination that Eastside was liable for constructive fraud is not supported by substantial evidence, there being no evidence of an essential element.

The third theory submitted to the jury was negligent misrepresentation. Kitchen Krafters argues that the Bank was negligent when it led them to believe that all payments made into escrow would be applied to the underlying trust indenture. We disagree.

In State Bank of Townsend v. Maryann's Inc. (1983), 204 Mont. 21, 664 P.2d 295, we adopted the definition of negligent misrepresentation as provided in Restatement (Second) of Torts § 552.

Proof of negligent misrepresentation requires the plaintiff

establish that:

a) the defendant made a representation as to a <u>past</u> or <u>existing</u> material fact;

b) the representation must have been untrue;

c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true;

d) the representation must have been made with the intent to induce the plaintiff to rely on it;

e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

f) the plaintiff, as a result of its reliance, must sustain damage.

As the first element indicates, the false representation must relate to a fact already in existence. This did not occur in this case. The evidence indicated that the Bank told Kitchen Krafters that all of its payments would dovetail with those due on the trust indenture. This evidence does not indicate that the Bank misrepresented any existing facts. This statement only became in possible error when the Bank later allegedly failed to properly apply the $5,000 prepayment. Kitchen Krafters cannot, therefore, successfully assert a cause of action based upon negligent misrepresentation because it fails to establish the first element. Accordingly, the jury's findings on this issue are not supported

by substantial evidence.

The final issue submitted to the jury required it to determine whether the Bank breached a special duty of disclosure. For guidance on this issue, we refer to § 551 of the Restatement (Second) of Torts which states:

§ 551. Liability for Nondisclosure

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

The elements contained in this section are met by the facts of this case. As an escrow, the Bank was an agent who owed a fiduciary duty to both Kitchen Krafters and Schell in all matters affecting the escrow relationship. First Fidelity Bank v. Matthews (1984), 214 Mont. 323, 692 P.2d 1255. Furthermore in its capacity as an agent, the Bank had a duty to make full disclosure to its principals of all material facts relevant to the agency. 3 Am.Jur.2d Agency § 211. The evidence submitted supports the contention that this duty was breached.

The Bank possessed the amortization schedules for the contract for deed and the trust indenture. The jury could find that based upon this knowledge and its fiduciary duty, it should have disclosed the payment discrepancy to Kitchen Krafters in a timely matter. Also a finding could be had that through the Bank's failure to disclose this information, Kitchen Krafters was induced

13

to rely upon the representation that the trust indenture was being amortized at the same rate as the contract for deed. By the time the Bank finally disclosed this payment discrepancy, it was too late for Kitchen Krafters to do anything to remedy the situation because Schell was insolvent and had filed for bankruptcy. We hold there is substantial evidence to support a verdict rendered against the Bank in this cause.

## III

The Bank argues that the District Court erred in its instructions to the jury on causation. The Bank is contending the lower court erred by instructing on the substantial factor test and failed to instruct on proximate cause. We agree that the lower court erred in failing to instruct on proximate cause.

The legal principles surrounding the element of causation have been set forth in Young v. Flathead County (Mont. 1988), 757 P.2d 772, 45 St.Rep. 1047. This case succinctly sets forth the law on this subject as it has been developed in Montana. Therefore, we review the legal principles set forth in Young.

In determining whether a defendant's breach of duty caused a plaintiff's injury, one must conduct a two-tiered analysis. First, one must determine whether the defendant's actions were the cause-in-fact of the plaintiff's damages. Causation in fact can be established in one of two ways. Normally, the "but-for" test is used. Under the "but-for" test, causation in fact is established simply by proving that the plaintiff's injury would not have occurred "but for" the defendant's illegal conduct. Young, 757

14

P.2d at 777. Stated differently, the defendant's conduct is a cause of an event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it. Prosser and Keeton on Torts (5th Edition) § 41.

The "but for" rule serves to explain the great majority of cases. However, there is one type of situation in which it fails. If two causes concur to bring about an event, and either one of them, alone, would have been sufficient to cause the identical result, some other test is needed. In response to this problem, the courts have developed the "substantial factor test." Young, 757 P.2d at 777.

The substantial factor test originated in the Minnesota case of Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. (Minn. 1920), 179 N.W. 45. In this case, the defendant negligently started a fire which combined with other fires of unknown origin and destroyed the plaintiff's property. Each of the fires, by itself, had the ability to destroy the property.

In this type of situation, the "but for" test was impossible to satisfy because, as previously stated, any of the fires, acting alone, could have destroyed the plaintiff's property. The court, however, refused to absolve the defendant of liability on the ground that the identical harm would have occurred without his negligent act. Such a result would prevent the plaintiff from realizing any recovery. Therefore, the courts have uniformly held that a defendant's conduct is a cause of an event if it was a

15

material element and a substantial factor in bringing it about. Prosser and Keeton on Torts (5th Edition) § 41. In short, this rule dictates that a defendant will not be absolved from liability simply because the conduct of one or more others would have been sufficient to produce the same result. If his actions are a substantial factor in causing the plaintiff's injury, the defendant will be held liable.

As the above discussion demonstrates, cause-in-fact is determined in one of two ways--either through the "but for" test or the "substantial factor" test. Once either one of these tests is satisfied, the plaintiff has established that the defendant's conduct was the cause in fact of his injury. It is now incumbent upon him to move to the second tier of the causation analysis and prove that the defendant's conduct proximately caused his damages.

The laws of physics and Sir Isaac Newton tell us that there are causes and effects which continue into eternity. Therefore, in both a philosophical and a real sense, the consequences of a wrongful act can extend in time for years--perhaps beyond the defendant's lifetime. For this reason, the courts have found that sole reliance upon cause-in-fact analysis is undesirable. At some point within the chain of causation, the law must intervene and absolve the defendant from liability. Thelen v. City of Billings (Mont. 1989), 776 P.2d 520, 46 St.Rep. 1108. It was this policy consideration which led to the development of "proximate" or "legal" cause.

Proximate cause is normally analyzed in terms of

foreseeability. Simply stated, one is only liable for consequences which are considered to be reasonably foreseeable. Prosser and Keeton at § 43. If the consequences of one's wrongful act are not reasonably foreseeable, then it follows that it was not proximately caused by that act. Using this analysis, one must look forward through the chain of causation in order to determine whether the events which occurred were foreseeable. If they were, the element of proximate cause is satisfied and liability will attach. Prosser and Keeton, at § 43.

We must now apply this causation analysis to this case in order to determine whether the District Court's instructions to the jury were proper. The jury was instructed on causation as follows:

Instruction No. 13.

A legal cause of the damage is a cause which is a substantial factor in bringing it about.

Instruction No. 14.

The defendant's conduct is a cause of the damage if it helped produce it and if the damage would not have occurred without it.

Instruction No. 13, although improperly worded, was correctly given. It is improperly worded due to the fact that the adjective "legal" is used before the word "cause." Legal cause is synonymous with proximate cause. Young v. Flathead County (Mont. 1988), 757 P.2d 772, 45 St.Rep. 1047. This instruction is an instruction on the substantial factor test which is part of causation-in-fact, not proximate cause. Therefore, the word legal should be removed in order to prevent confusion between proximate cause and cause-in-

17

fact.

The facts of this case require that the court instruct the jury on whether the Bank's conduct was a substantial factor in bringing about Kitchen Krafters' damages. Kitchen Krafters alleged that the Bank's failure to properly apply the $5,000 payment caused it to sustain monetary damages through the loss of its business. The Bank, in reply, has argued that this misapplication did not cause Kitchen Krafters damages. It argues that Kitchen Krafters' loss of business was caused instead by outside factors such as a poor economy.

Kitchen Krafters acknowledges that the poor economy may have contributed to its demise. However, it steadfastly maintains that the Bank's conduct combined with these outside influences and as a result was a substantial factor in bringing about its injuries. On remand the jury should be presented with a substantial factor instruction in order to determine whether the results of the Bank's conduct concurred with other events to cause Kitchen Krafters' collapse.

Instruction No. 14 is nothing more than a recitation of the "but for" test. The jury had already been instructed on causation-in-fact through the substantial factor instruction. Therefore, Instruction No. 14 was superfluous. Moreover, this instruction cannot take the place of an instruction on proximate cause. In order to be properly instructed on proximate cause, the jury must be directed to look forward, through the chain of causation, and to determine whether events which occurred subsequent to Eastside's

wrongful act were foreseeable. A proper instruction on proximate cause should be worded as follows:

> In order for the defendants negligence (failure to disclose) to be the proximate cause of the plaintiff's injury, it must appear from the facts and circumstances surrounding the accident [the nondisclosure] that the defendant as an ordinarily prudent person, could have foreseen that the plaintiff's injury would be the natural and probable consequence of the wrongful act.

Kitchen Krafters maintains that the Bank's actions caused the break up of the corporation. According to their argument, Wirtz left the corporation as a direct result of Eastside's failure to release the Schell trust indenture. This may be true. However, this occurrence may or may not have been a reasonably foreseeable consequence of the Bank's actions. If this event was foreseeable, the Bank could be liable for the damages sustained as a result of his departure. If it was not foreseeable, then this consequence should be regarded as a superseding intervening event which breaks the chain of causation as to any damages as a result of his leaving. In this circumstance the Bank cannot be held liable for damages resulting from Wirtz's departure.

Due to the failure to instruct the jury on causation, this case is reversed and remanded for a new trial. Kitchen Krafters is entitled to assert, as a cause of action, breach of the duty to disclose. Reversed and remanded with instructions to conduct proceedings consistent with this opinion.

_R. C. McDonough_
Justice

19

We Concur:

_____
                Chief Justice

_____

_____

_____

_____
                Justices

_____
District Judge Thomas A. Olson
sitting for Justice Fred J. Weber

20

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 88-518

KITCHEN KRAFTERS, INC.,
        Plaintiff and Respondent,

        -vs-

EASTSIDE BANK OF MONTANA,
        Defendant, Counterclaimant
        and Appellant,

EASTSIDE BANK OF MONTANA,
        Third Part Plaintiff,

        -vs-

ROBERT W. SCHELL; MARY ANN CLARY, formerly
MARY ANN SCHELL, former wife of ROBERT W.
SCHELL; STATE OF MONTANA, EMPLOYMENT SECURITY
DIVISION, DEPARTMENT OF LABOR & INDUSTRY, et al.,
        Third Party Defendants.

ORDER

IT IS ORDERED that the last sentence of the second complete

paragraph on page 8 of our opinion, dated March 20, 1990 be revised

to read as follows:

> In light of these principles, it has long been recognized
> that the statute of limitations runs from the time of the
> breach and not from the time of injury, or in the case
> of fraudulent concealment, from the time of discovery.

IT IS FURTHER ORDERED that the petition for rehearing is

denied.

DATED this 24 day of April, 1990.

_____
Chief Justice

John Conway Harrison

Diane G. Barz

John C. Sheehy

R. C. McDonough

Thomas A. Olson

William E. Hunt

Justices