321 So.2d 925 (1975)
Jesse M. MILLER et ux.
v.
BROADMOOR VILLAGE, INC., et al.
No. 10398.
Court of Appeal of Louisiana, First Circuit.
September 2, 1975.
Rehearing Denied November 24, 1975.
Writ Refused January 14, 1976.
*926 Wm. M. Barnette, New Orleans, for National Supermarkets, Inc.
Wm. C. Kaufman, III, and Robert W. Smith, Baton Rouge, for Broadmoor Village, Inc., and Trinity Universal Ins. Co.
Michael A. Patterson, Baton Rouge, for appellees.
Before SARTAIN, ELLIS and PICKETT, JJ.
ELLIS, Judge.
This is a suit for damages for personal injuries suffered by Mrs. Ruth H. Miller when she fell while leaving the premises of the National Food Store in Broadmoor Shopping Center in Baton Rouge. Plaintiffs are Mrs. Miller and her husband, Jesse M. Miller. Defendants are National Super Markets, Inc., operator of the store, and Broadmoor Village, Inc., owner of the shopping center. Each of the defendants third partied the other, seeking contribution.
The case was tried on its merits before a jury, which returned a verdict for plaintiffs. From a judgment signed pursuant thereto, defendants have appealed. Plaintiffs have answered the appeal asking for an increase in the award made.
Outside the entrance and exit doors of the National store, there is a twelve foot covered sidewalk which abuts on the parking lot. There is a six inch curb where the sidewalk and the parking lot join. Immediately in front of the doors, at the edge of the sidewalk, there is a cart ramp, seventeen feet in width, and sloping from the level of the sidewalk to the surface of the parking lot which it meets at a point thirty inches from the curb. The ramp has been in use since the store was opened eight years prior to the accident.
Plaintiff testified that she fell while leaving the store when she placed her foot on the ramp. She testified that she did not know what caused her to fall. It is not contended that there was any foreign substance on the ramp which caused her to fall.
It is plaintiffs' contention that the defendants' liability arises from two bases. First, that the design of the ramp is inherently dangerous; and, second, that it does not conform to the minimum standards for such ramps in the Baton Rouge Building Code.
On both points, plaintiffs rely on the testimony of their expert witness, Murvan M. Maxwell, an architect. Mr. Maxwell testified that, in his opinion, the ramp was so steep as to constitute a hazardous condition. He further testified that, as he interpreted the Baton Rouge Building Code, the ramp constituted part of an "exit way" from the store. It is not disputed that the Code requires that a ramp in an exit way have a maximum slope of one inch in ten. The ramp in this case has a slope of one inch in five.
Defendants offered testimony to show that almost four million people had made purchases in the store over an eight year period, and that there had not been any complaints made about the ramp or any record of anyone having fallen thereon during that time. Plaintiff herself was a regular weekly shopper at the store during its eight year existence, and had used the ramp regularly during that time, without mishap.
In addition, the officials responsible for the enforcement of the provisions of the Baton Rouge Building Code testified that they did not consider the ramp to be part of the exit way of the store, and did not *927 consider the ramp to be in violation of the Code. Two architects testified that the ramp did not form part of the exit way.
Section 601.1 of the Baton Rouge Building Code, which is the same as the National Building Code, provides:
"601.1 Exit way and exit doorway defined.
"(a) Exit doorway means the doorway opening: directly to the exterior; to a horizontal exit; to an exit stairway; or to a similar place of safety.
"(b) Exit way means the exit doorway or doorways, or such doorways together with connecting hallways or stairways, either interior or exterior, or fire escapes, by means of which occupants may proceed safely from a room or space to a street or to an open space which provides safe access to a street. Two or more separate exit ways may use the same corridor or hallway."
We find the above provisions to be more susceptible of the interpretation placed on it by its administrators than that urged by Mr. Maxwell, and hold that the ramp is not in violation of the Baton Rouge Building Code.
The owner or occupant of the property must keep the premises in a reasonably safe condition. He cannot permit a hazardous condition to exist on his property without giving adequate warning to those legally on the premises. However, only conditions which would reasonably be expected to cause injury to one using ordinary care can be classified as hazardous or dangerous and give rise to the duty to warn. McCauley v. Nicholas, 297 So.2d 914 (La.App. 1 Cir. 1974); writ denied, 302 So.2d 24.
In a case of this nature, plaintiffs must show the existence of a hazardous condition of which the owner had actual or constructive notice, and which caused the injury complained of. We find that they have failed in the first and third of these requirements.
Considering the fact that literally millions of people have used the ramp over a period of eight years without mishap, we can only conclude that the ramp per se presented no hazard to those using it. Plaintiff herself was unable to say what made her fall. Her own use of the ramp for many years, without any prior difficulty, belies her contention that the fall was caused by the faulty design of the ramp. We are aware of the testimony of Mr. Maxwell as to the hazardous nature of the ramp. However, in view of the law, and the overwhelming evidence as to prior safe use of the ramp by plaintiff and millions of others, we are unable to give it credibility. If the jury did so, it committed manifest error. Since we are of the opinion that plaintiffs have failed to prove fault on the part of the defendants, we need not consider the defense of contributory negligence raised by the defendants or their third party demands.
The judgment appealed from is reversed, and there will be judgment in favor of defendants dismissing plaintiffs' suit. All costs are to be paid by plaintiffs.
Reversed and rendered.