No. 89-466

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JONNIE MUSGROVE DAVIS,
                    Plaintiff and Respondent,

        -v-

THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS;
CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH
OF JESUS CHRIST OF LATTER DAY SAINTS; CORPORATION
OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS; RISK MANAGEMENT DIVISION,
KALISPELL STAKE CENTER OF THE CHURCH OF JESUS
CHRIST OF LATTER DAY SAINTS; and JOHN DOES I-X
(unknown divisions, departments, subsidiaries,
affiliates, associations, whether incorporated or
unincorporated, agents, employees, bishops,
presidents, assigns, or any other entity or person
related to any of the above-named defendants,
                    Defendants and Appellants,


APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Leif B. Erickson, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Kenneth E. O'Brien; Hash, O'Brien & Bartlett;
                Kalispell, Montana

        For Respondent:

                Dana L. Christensen & Pamela L. Miller; Murphy,
                Robinson, Heckathorn & Phillips; Kalispell, Montana


                        Submitted on Briefs:  February 9, 1990

                                Decided:  July 12, 1990

Filed:

                        Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The defendants (Church) appeal the judgment entered in the District Court, Eleventh Judicial District, Flathead County, awarding Jonnie Musgrove Davis damages for personal injury in the amount of $401,864.28. We affirm the District Court.

The issues raised by the Church are:

1. Whether there was substantial evidence to support the jury verdict.

2. Whether it was error to allow Dr. Alexander McNeill to render an opinion as to degree of slope of the walkway.

3. Whether the District Court erred in giving Davis' proposed instructions nos. 21, 22, 24, 27, 28 and 30, and refusing the Church's proposed instructions nos. 35, 36, 42, 43 and 44.

Plaintiff and respondent Jonnie Musgrove Davis (Davis) brought a lawsuit on July 20, 1987 to recover for injuries suffered as a result of a fall on the premises of the Kalispell Stake Center of the Church of Jesus Christ of Latter Day Saints. In her complaint Davis alleged that the Church was negligent in (1) failing to design and construct a reasonably safe sidewalk, (2) failing to erect a handrail, (3) failing to properly maintain the walkway by allowing an unnatural accumulation of ice to be present, and (4) failing to warn of the dangerous condition.

At the time of the accident, Davis was a volunteer youth seminary teacher at the Kalispell Stake Center. On February 25, 1985, she arrived at the Center at approximately 6 a.m. Several inches of snow had fallen during the night; but Davis entered the

2

Center without difficulty.

During Davis' seminary classes, the Church janitor arrived and shoveled the walkway. Usually he applied salt to prevent ice build up. However, on this occasion none was applied.

Davis completed her classes by 8 a.m., and proceeded to exit the building. As she left, she noted that the walkway had been shoveled, and she started to walk towards her car. The top portion of the walk was nearly level, and Davis had no problem negotiating it. At the midpoint of the walkway however, the slope downward increased. In this four to six foot long span, the sidewalk had been altered to remove two steps which were present in the original construction. The walk was reconstructed to enable elderly and wheelchair-bound church members easier access. As Davis descended this slope she slipped and fell, landing on her head and neck. As a result of her injuries, Davis has undergone five operations to her cervical spine.

Davis filed suit in 1987. In the summer of 1985, subsequent to the accident, the Church redesigned and replaced portions of the walkway due to deterioration. Consequently, no exact measurement of the gradient of the walkway where Davis fell could be determined at trial.

At the close of Davis' case, the Church moved for a directed verdict. The motion was denied, as was the subsequent motion for new trial. The Church contends now, as then, that no basis exists for a finding of negligence on the part of the Church.

Because this is an appeal from the findings of a jury, we need

only determine whether there is substantial evidence in support of the verdict. The appropriate standard of review requires that the findings of a jury shall not be reversed on appeal unless they are not supported by substantial evidence. Kitchen Krafters, Inc. v. Eastside Bank of Montana (Mont. 1990), 789 P.2d 567, 47 St.Rep. 602. Substantial evidence is defined as that evidence that a reasonable mind might accept as adequate to support a conclusion. Although it may be based upon weak and conflicting evidence, in order to rise to the level of substantial evidence it must be greater than trifling or frivolous. Christensen v. Britton, et al (Mont. 1990), 784 P.2d 908, 46 St.Rep. 2223.

The Church maintains that the jury's verdict is not supported by substantial evidence. In order to address this contention we must review the evidence in a light most favorable to Davis. Wheeler v. City of Bozeman (1988), 232 Mont. 434, 757 P.2d 345.

In her complaint, Davis alleged that the Church was negligent for failing to properly design, construct and maintain the walkway which led to the main doorway of the Kalispell Stake Center. She also alleged that the Church was negligent in failing to warn her of the dangerous condition of this walkway. In order to prove these assertions she must establish:

1) The Church had a duty to construct and maintain the walkway in a reasonably safe condition.

2) The Church breached that duty.

3) The Church's breach caused Davis to sustain damages.

See Kitchen Krafters, Inc., 789 P.2d at 567.

4

No one contends that Davis did not sustain an injury after she slipped and fell upon the sidewalk. Therefore, we need only review the evidence to determine whether there was substantial evidence for the jury to determine that the Church had a duty to provide safe access to the church, whether this duty was breached, and whether that breach caused Davis' injuries. See Blaskovich v. Noreast Development Corp (Mont. 1990), ___ P.2d ___, 47 St.Rep. 740.

The law is clear that a landowner has a duty to use ordinary care in maintaining his premises in a reasonably safe condition or to warn those legally on the land of any hidden or lurking dangers. Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88, 446 P.2d 921. Given this rule of law, it is elementary that the Church had a duty to provide a sidewalk leading to the church which is reasonably safe.

The question then becomes - did the Church breach this duty? At trial, both sides presented testimony concerning the condition of the walkway. Much of this testimony centered around the slope of that portion of the sidewalk which led to the front doors of the church. The slope is important because the Uniform Building Code requires that handrails be provided on any slope greater than ten percent, and in this case no handrails were provided. The Church maintains that the slope did not exceed a gradient of ten percent. Davis on the other hand, contends that the slope ranged from 16 to 25 percent.

Both parties base their slope calculations on testimony

5

presented by witnesses at trial. Davis presented testimony given by Dr. Alex McNeill, an expert in biomechanics. Dr. McNeill testified that the slope of the walkway, where Davis fell, ranged from 16 to 25 percent. Apparently, he based this opinion upon a review of photographs taken of the walk, numerous blueprints prepared in connection with the original church construction, and a review of depositions taken of various witnesses.

Davis also presented testimony of Allan Denning, a long time member of the church. His testimony primarily concerned his memory of the entrance way as it existed at the time of the accident. He testified, that as a child, he would slide down the slanted area. During trial, in response to a request from counsel, he drew a picture to demonstrate the slope of the sidewalk. His picture indicated a slope of approximately 24%.

The Church, in an attempt to discredit the testimony provided by Dr. McNeill and Mr. Denning, presented calculations and testimony to prove its slope percentages, which did not exceed ten percent. They attempted to bolster this evidence through testimony given by Harry Schmautz, a licensed architect and Harold Conat, an experienced cement finisher, who installed the walkway. Both testified that the walkway was not dangerously steep and that no handrail was necessary.

In addition to evidence of the slope of the walkway, the jury heard testimony concerning the slickness of the sidewalk on the day of the accident. In particular, the church janitor, John Reading testified that he shoveled the walk at approximately 7:30 a.m. He

further testified that he did not apply any salt to the sidewalk despite the fact that this was regularly done in the past.

Dana Tatum, a young woman who witnessed Davis' fall, testified that the sidewalk was slick on the day of the accident. Apparently, she had walked the sidewalk shortly before Davis slipped and fell. She testified that because the sidewalk was so slick she made her younger brother accompany her down the ramp. She further stated that at the time she wondered why there was no salt applied to the walkway.

Following submission of all of this testimony, the jury determined that the Church was 76% responsible for the injury and that Davis was 24% responsible. While the testimony was conflicting, it is apparent that there was substantial evidence to support the jury's findings that the sidewalk was unreasonably dangerous. Where conflicting evidence exists the credibility and weight to be given to the evidence is within the jury's province. Wheeler, 757 P.2d at 345. The jury found sufficient evidence that the walkway was unsafe and this Court will not overturn its determination by weighing conflicting evidence on appeal. Wheeler, 757 P.2d at 347.

There is also substantial evidence to support a finding that the unreasonably dangerous condition of the sidewalk caused Davis to slip and to sustain injuries. In this regard, we need only point out that Dr. McNeill testified that in his opinion, the slope and the icy condition of the ramp combined to cause Davis to fall. The jury obviously agreed with this testimony, and once again, we

7

will not invade its province.

Our review of the evidence establishes that there is substantial evidence to support the jury's finding of negligence on the part of the Church. Each of the elements of this cause of action are supported by evidence presented at trial. The findings of the jury are therefore affirmed.

The Church contends that the lower court erred by allowing Dr. McNeill to offer an opinion as to the slope of the sidewalk where the injury occurred. It maintains that Dr. McNeill was only retained for the purpose of rendering testimony on the general dynamics of "how people fall," not on the slope of the walk. Accordingly, the .Church argues that his testimony was improper because they were not adequately prepared to challenge his opinions through cross-examination.

As stated earlier, Dr. McNeill was retained by Davis as an expert in biomechanics. He stated at his deposition and at the time of trial that he looked at many factors to determine what may have caused the fall. During his deposition, Dr. McNeill made numerous references to the slope of the sidewalk and its significance to the formulation of his opinion as to how the fall occurred. He stated that "[e]ssentially the contribution that the slope might--that the slope surface might have made to that fall, that's principally what I have been asked to look at." Dr. McNeill made it clear that he was perusing architectural drawings and surveys in an attempt to determine the gradient of slope. It was made clear before trial that Dr. McNeill intended to render an

opinion as to the factors contributing to the fall, and that gradient of slope would be one of those factors. The Church's contention that Davis failed to divulge that Dr. McNeill was an expert witness on the range of slope is not well taken.

Finally, the Church contends the lower court erred by its admission of a number of Davis' instructions and the omission of several of the Church's instructions.

The Church states Davis' instructions nos. 21, 22 and 24 incorrectly state the legal standard of causation.

Instruction no. 21 reads:

Before you can find the defendant liable, you must find the defendant's negligence was a cause of the plaintiff's injury.

Instruction no. 21 is a verbatim transcription of Montana Pattern Instruction (MPI) no. 2.06.

Instruction no. 22 reads:

The defendant's conduct is a cause of the injury if it helped produce it and if the injury would not have occurred without it.

Instruction no. 22 comes directly from MPI 2.08.

Instruction no. 24 states:

The plaintiff has the burden of proving:

(1) That the defendant was negligent.

(2) That the plaintiff was injured.

(3) That the defendant's negligence was a cause of the injury to the plaintiff.

(4) The amount of money that will compensate the plaintiff for her injury.

The source for no. 24 comes directly from MPI 2.12.

The Church contends that none of the above instructions refer to proximate or legal cause, and are therefore erroneous. The Church offered a modified version of MPI 2.06, which inserted the word "proximate" before cause, and included a paragraph involving intervening superseding cause. The Church's instruction states as follows:

Before you can find the Defendant liable, you must find that the Defendant's negligence was a proximate cause of the Plaintiff's injury.

The proximate cause of an injury is that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which it would not have occurred.

In Kitchen Krafters, Inc., 789 P.2d at 567, we expressly disapproved of MPI 2.08 because it does not adequately instruct the jury on proximate cause. In that case we reversed a jury verdict for the plaintiff because we held that the jury was not adequately instructed on causation. MPI 2.08 is an instruction on cause in fact which is part of a two-tiered analysis that must be applied whenever a causation question is confronted. Kitchen Krafters, 789 P.2d at 574.

After cause-in-fact is established, the plaintiff must prove that the defendant's actions were the proximate cause of his damages. In order to establish the existence of proximate cause, it must be shown that the consequences of the defendant's wrongful act were reasonably foreseeable. As stated in earlier cases, "[P]roximate cause is one which in a natural and continuous sequence, unbroken by any new, independent cause, produces injury . . ." Young v. Flathead County (1988), 232 Mont. 274, 757 P.2d

10

772. "New and independent causes," which are not foreseeable, are generally regarded as superseding intervening events which break the chain of causation and absolve the defendant of liability. Kitchen Krafters, 789 P.2d at 576.

The question of proximate cause is an issue of fact to be decided by the jury. Thayer v. Hicks (1990), 47 St.Rep. 1082, 1095, ___ P.2d ___, ___. When addressing this issue, the jury must look forward, through the chain of causation, to determine whether the events which occurred subsequent to the defendant's act were foreseeable. Kitchen Krafters, 789 P.2d at 575. If events, which were unforeseeable, entered into the chain of causation, and produced the plaintiff's injury, proximate cause cannot be established and the plaintiff's actions must fail.

In the case now before us, the lower court did not instruct the jury on proximate cause. This is a negligence action and therefore proximate cause must be established in order for the plaintiff's allegations to prevail. Therefore, the lower court erred in refusing to offer the Church's instruction on proximate cause.

However, in order to constitute reversible error, the lower court's actions must affect the substantial rights of the complaining party. Rollins v. Blair (1989), 235 Mont. 343, 767 P.2d 328. The Church objected to instructions nos. 21, 22 and 24 on the grounds that they did not give the appropriate definition of proximate cause. We agree with this conclusion, but we fail to see how the Church was prejudiced. In neither its objection to the

11

lower court or in its brief on appeal, does the Church argue that there were any superseding intervening events which broke the chain of causation. Furthermore, there is no evidence of such occurrences. Davis argued, in pertinent part, that the ramp was negligently designed and maintained. As stated earlier, the jury found sufficient evidence to agree with this assumption. There is no evidence that any independent cause interrupted the chain of events between the Church's wrongful act and Davis' fall. We therefore hold that the lower court's refusal to instruct on proximate cause was error; however in this case such error was harmless and is not therefore reversible.

The Church assigns error to the District Court in giving Plaintiff's Proposed Instruction pertaining to premises liability, which reads as follows:

> The defendant has the duty to exercise ordinary care to keep its premises reasonably safe for all persons who foreseeably might come upon them.
>
> In determining whether premises were reasonably safe, you should consider all of the surrounding circumstances shown by the evidence including, but not limited to, the following matters:
>
> 1.   The manner in which the property is used;
> 2.   The setting, location and physical characteristics of the property;
> 3.   The type of person who would reasonably be expected to visit the premises; and
> 4.   The specific type of hazard or unsafe condition alleged.

The Church maintains that it had no duty to exercise ordinary care to keep the church premises reasonably safe for Davis because a natural accumulation of ice and snow was present. Under their theory, a landowner has no duty to exercise ordinary care to

12

maintain a reasonably safe premises if the dangerous condition is created by a natural accumulation of ice or snow. See Leubeck, 446 P.2d at 921.

The Church's contention must fail. Davis maintained, throughout trial, that the Church was negligent, not only due to its failure to remedy the icy condition, but also because its sidewalk was too steep and because it failed to provide a handrail. This case involves more than a simple accumulation of ice and snow. This instruction reflects this theory, and was therefore properly given.

The Church also takes issue with Davis' instruction no. 28, which states:

> An owner has a duty to warn persons who come upon his property of any temporary unsafe condition:
>
> 1. created by it or its employees; or
>
> 2. caused by negligence on its part

The Church contends the above instruction is an incorrect statement of the law and that no facts in the record support a finding that either the Church or an employee negligently caused any unsafe conditions to exist. The Church contends that its proposed instruction no. 46 is the proper statement of the law and was erroneously refused. The Church's instruction no. 46 stated that no duty to warn of a danger exists if it would be reasonable to expect that an ordinary person would observe the danger.

We do not agree. The Church argues it had no duty to warn unless the conditions which caused Davis' injuries were "hidden or lurking." See Regedahl v. Safeway Stores, Inc. (1967), 149 Mont.

13

229, 425 P.2d 335. This assertion carries little weight as the given instruction was a correct statement of the law, which fit Davis' theory of the case. The court gave several instructions imputing negligence to the plaintiff if she should fail to see or be aware of a condition "universally known to be reasonably dangerous, or [is] obviously so." The court properly allowed instructions adaptable to the theories of the Church's case, and refused to give offered instructions where the subject matter was adequately covered by other instructions. Rollins v. Blair (1989), 235 Mont. 343, 767 P.2d 328. The Church cannot contend it was error where the court gave instructions adaptable to both parties' cases and refused instructions on statements of law already covered.

The Church further argues that the District Court erred in giving Plaintiff's Proposed Instruction No. 30, set forth as follows:

> A property owner may be held liable for falls on accumulations of ice and snow where the hazard created by the natural accumulation is increased or a new hazard is created by an affirmative act of the property owner; even where such a condition is actually known or obvious, a property owner may be held liable if he should have anticipated that injuries would result from the dangerous condition.

The Church asserts that there are no facts justifying this instruction and that it is inconsistent with Montana law relating to a property owner's duty with respect to natural accumulations of ice and snow. The Church maintains that the record is devoid of evidence that the Church did anything other than shovel the walkway, and therefore this instruction is not applicable and that

it is only applicable where the hazard presented by a natural accumulation of snow has been increased by the acts of the property owner.

We disagree. Instruction no. 30 is the law in Montana relating to accumulations of snow and ice. Cereck v. Albertsons (1981), 195 Mont. 409, 637 P.2d 509. Davis, as part of her case, argued that a sheen of ice was left after the janitor shoveled the walk. Such a condition, combined with the gradient of the walk, rendered the natural accumulation of snow and ice unnatural. The instruction therefore related to an important part of Davis' theory of the case. It would have been reversible error for the District Court to refuse to instruct the jury on this aspect of her theory.

The Church claims the lower court erred in refusing to give its proposed instructions nos. 35, 36, 42 and 44. Instructions nos. 35, 36 and 44 are redundant, as they were all adequately addressed in jury instructions nos. 34, 37 and 45.

The Church's proposed instruction no. 42 misconstrues the law by stating that a landowner is not negligent solely by the act of removing snow. Whether an affirmative act by the landowner creates or increases a hazard can be question of fact to be determined by the jury. The trial court correctly denied the instruction.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

15

_John Conway Harrison_

_Diane G. Barz_

_William E. Hunt, Sr._

_____

_____
Justices

Justice John C. Sheehy, specially concurring:

I concur in the foregoing opinion. I want to speak my admiration of the judicial sleight-of-hand by which the majority reach a proper result in a slip-and-fall-on-snow case without mentioning Restatement (Second) of Torts, § 343(A)(1) (1965), nor Kronen v. Richter (1984), 211 Mont. 208, 683 P.2d 1315, nor Kaiser v. Town of Whitehall (1986), 221 Mont. 322, 718 P.2d 1341, nor Limberhand v. Big Ditch Company (1985), 218 Mont. 132, 706 P.2d 491, nor differentiating Blaskovich v. Noreast Development Corporation, Cause No. 89-117 (Decided April 10, 1990), ___ Mont. ___, 790 P.2d 977.

The approval by this Court in this Opinion of plaintiff's instruction no. 30, set out in the Opinion, is an approval of at least a part of § 343(A)(1) of the Restatement in the following:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Lesson: A slip and fall case may yet have life, even after Blaskovich.

_____
                Justice

17