NO. 93-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DARLENE KNUTSON and RON KNUTSON,

    Plaintiffs/Respondents & Cross-Appellants,

    -v-

TIMOTHY C. BARBOUR, JAMES E. NELSON,
and T.J.'S POOL AND GAME ROOM, INC,
d/b/a T.J.'S LOUNGE,

    Defendants/Appellants & Cross-Respondents.



AUG 16 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
    In and for the County of Cascade,
    The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert J. Emmons and Joseph M. Sullivan,
        Emmons & Sullivan, Great Falls, Montana

    For Respondent:

        Howard F. Strause, Attorney at Law,
        Great Falls, Montana

    Amicus Attorneys:

        Gerald J. Neely, Billings, Montana (Montana Medical
        Association); Debra D. Parker, Murphy, Robinson,
        Heckathorn & Phillips, Kalispell Montana (Montana
        Defense Trial Lawyers); Patricia Cotter, Great
        Falls, Montana (Montana Trial Lawyers Association)

                Submitted:  March 29, 1994

                  Decided:  August 16, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal by the defendants and a cross-appeal by the plaintiffs from a jury verdict in favor of the plaintiff, Darlene Knutson in a "slip and fall" case. The jury attributed negligence to the defendants Timothy C. Barbour, James E. Nelson, d/b/a T.J.'s Lounge (80%) and found Darlene Knutson comparatively negligent (20%). Both parties appeal certain issues. We reverse and remand.

## ISSUES

Although numerous issues were appealed and cross-appealed, we dispose of this case upon the following two issues:

I.   Did the District Court err in concluding that the Uniform Building Code (UBC) applied in this case as a matter of law?

II.   IS the $50,000 distinction in § 27-1-308, MCA, unconstitutional in that it violates the equal protection and due process clauses of the Montana Constitution?

## FACTUAL BACKGROUND

On Wednesday, April 4, 1990, Darlene Knutson made plans with her friend, Shelly Hagen, to socialize at Joe's Place, a tavern in Great Falls. Darlene drove to the Holiday Village Mali to retrieve Shelly at 5:30 p.m. and then drove to Joe's Place. Darlene testified that she had two drinks during the time spent at Joe's Place, and Shelly's testimony supports that statement.

At approximately 8:30 p.m., Shelly and Darlene left Joe's Place and went to T.J.'s Lounge, another tavern, to meet Shelly's

friend.  At the time they left Joe's Place, the weather was turning to sleet.

Darlene drove her car to **T.J.'s** and parked south of the alley in the Evergreen Mall parking lot.  **T.J.'s** customers commonly park across the alley in the mall parking lot and use the **"back door."** The area is paved and slopes from the alley toward the rear door of **T.J.'s** and customers entering the lounge must walk through this sloped, paved area.

Darlene and Shelly were walking toward **T.J.'s** when Darlene remembered she left a special **T.J.'s** "discount **drink"** mug in her vehicle.  She returned to the car, retrieved her mug, and walked toward **T.J.'s** again.  On her way to **T.J.'s,** she slipped and fell. Her friend, Shelly and an unidentified man carried her into **T.J.'s** lounge.  Darlene's husband, Ron Knutson, was called and was informed of the incident.  He arrived at **T.J.'s** with the couple's son and drove Darlene to Columbus Hospital.

Dr. Powers, an orthopedic surgeon, attended Darlene.  His examination revealed that she had **"an** oblique fracture of the supercondylar area of the **femur."**  Eventually, Darlene required four operations to facilitate the healing process in her leg.

PROCEDURAL  BACKGROUND

The plaintiffs/respondents Darlene and Ron Knutson, filed their complaint and demand for jury trial on January 8, 1991.  The defendants/appellants Timothy C. **Barbour** and James E. Nelson, d/b/a **T.J.'s** Lounge,  filed a motion to dismiss, or in the alternative,

3

motion for a more definite statement, on February 11, 1991.
Subsequently, the defendants filed an answer on March 8, 1991.

A jury trial commenced on October 26, 1992. On November 2,
1992, the jury returned a verdict for Darlene Knutson in the amount
of **$325,000.00.** However, the jury determined that the percentage
of Darlene's comparative negligence was twenty percent. Ron
Knutson was not awarded damages for his loss of consortium claim.

The defendants appealed on February 26, 1993, from the final
judgment dated January 6, 1993, from an order of January 4, 1993,
denying defendants' post trial motions and from an order of
February 1, 1993, denying the defendants' motion for a new trial.
The plaintiffs brought a cross-appeal on March 1, 1993, from the
final judgment on January 6, 1993, from an order dated January 4,
1993, wherein the District Court reduced the jury verdict by
**$62,285.89** and failed to grant Ron Knutson's motion for a new trial
on the issue of damages.

DISCUSSION

I. THE APPLICATION OF THE UNIFORM BUILDING CODE (UBC)

Did the District Court err in concluding that the Uniform
Building Code (UBC) applied in this case as a matter of law?

The trial court judge in the present case issued an order on
October 14, 1992, granting the plaintiffs' motion to apply the
requirements of the UBC to the area where Knutson fell and
sustained her injury. The trial court ruled that the **"ramp"** upon
which Knutson fell was subject to the requirements of the 1979
Uniform Building Code which had been previously adopted by

4

ordinance by the City of Great Falls.  As a result, at trial the court instructed the jury on negligence per se.

The District Court's order is particularly troubling because of the fact that there was no evidence upon which to base a ruling that a) the area in question was a **"ramp"** within the meaning of the UBC;  and b) the UBC applied to the area in question.  To the contrary, however, there was testimony that the area in question was not a **"ramp"** within the meaning of the UBC.  The appellants provided expert testimony from a former Great Falls City Engineer stating that:

> **[T]he** Uniform Building Code requirements regarding **ramps...do** not apply to the area where Plaintiff describes she had fallen.  Further, the City of Great Falls would not and did not apply this standard to an area of the type behind **T.J.'s** Lounge.  Finally, application of the Uniform Building Code in the manner described in Plaintiff's Complaint requiring hand rails in an area which is also used for parking is neither practical nor feasible because more problems would be created than solved.

Moreover, at a later date, the appellants filed another affidavit from a professional member of the International Conference of Building Officials, the body which publishes the UBC, stating that the area in question was **"not** a ramp as described by Plaintiffs. Both by definition and by general limits of the Uniform Building Code, the Uniform Building Code has no application to the area in question."

The Knutsons offered **no** expert testimony or opinion affidavits regarding the applicability of the UBC to the area in question in their brief in support of their motion to have the trial court determine the applicability of the UBC.  Their proof simply assumed

5

the applicability of the UBC and went solely to the angle of slope of the area in question. Furthermore, they did not offer expert testimony, affidavits or evidence at any later point to support their conclusion that the area in question was a "ramp" as envisioned by the UBC. The Knutsons, and then the District Court, assumed that the area in question was a ramp and did not discuss, for all practical purposes, the UBC definitions for "ramp," or any evidence of any substance to support their conclusion in that regard.

The UBC does not define the term "ramp" anywhere in the Code. The Code specifically provides that where terms are not defined, Webster's Third New International Dictionary of the English Language, Unabridged, copyright 1961, will provide the ordinary accepted meaning for that term. The aforementioned dictionary defines "ramp" as "a sloping way: as a: a sloping floor or walk leading from one level to another....*' The area in which Knutson fell is neither a floor nor a walk. This definition contemplates a structure which is built to lead from one area to another. Timothy Barbour stated in an affidavit that the area in question was asphalted at the time the building was originally constructed in 1965 and has remained unchanged with the exception of the area where Godfather's Pizza now stands. The area serves as the parking lot for the Godfather's Pizza delivery vehicles and must be traversed to enter the back door of T.J.'s Lounge.

The trial court, however, without any analysis or reasons stated, simply concluded that the area in question was a ramp, and

assumed the applicability of the UBC. Given our reading of the UBC and applicable case law, within this jurisdiction and without, the area in question is more akin to a driveway, or a sloped parking area, than the type of ramp envisioned by the UBC. The cases from outside this jurisdiction generally have applied the UBC to concrete sidewalks and walkways constructed specifically to facilitate egress or ingress to a building. <u>See</u> Mortimer v. Martin (Ca. 1957), 308 P.2d 840: Sorensen v. Western Hotels, Inc. (Wa. 1960), 349 P.2d 232; Miller v. Broadmoor Village, Inc. (La. 1975), 321 So.2d 925; Grand Union Co. v. Rocker (Fl. 1984), 454 So.2d 14; Foster v. Kwik Chek Super Markets, Inc. (Ala. 1969), 224 So.2d 895. The area in question here serves primarily as a parking lot for pizza delivery vehicles. We have found no authorities which have applied the UBC ramp requirements to an area similar to where Knutson fell, and, as pointed out above, the expert opinion evidence presented to the District Court on the applicability issue was that the area was <u>not</u> a ramp nor was the area covered by the UBC.

Davis v. Church of Jesus Christ of LDS (1990), 244 Mont. 61, 796 P.2d 181, and Herbst v. Miller (1992), 252 Mont. 503, 830 P.2d 1268, the two Montana cases which address the UBC, both applied the UBC to the areas at issue in their respective cases, without any analysis of the UBC's applicability and without that issue being raised. <u>Davis</u> involved the plaintiff's fall on a sidewalk outside a Latter Day Saints' church as she was leaving the building and walking toward her automobile. The sloping cement walkway was

7

specifically built by the Church to facilitate ingress to and egress from the church building.

A key issue in Davis was the slope of the portion of the sidewalk which led to the front doors of the church because under the UBC, handrails must be provided on any slope greater than ten percent and there were no handrails provided for this area of the sidewalk. Both sides presented conflicting testimony about the slope of the sidewalk, from less than ten to twenty-five percent and this Court found that there was substantial evidence to support the jury's conclusion that the Church was seventy-six percent responsible for the injury sustained by Davis. There is no analysis of the applicability of the UBC in Davis with liability being premised upon a landowner's duty to use ordinary care in maintaining his premises in a reasonably safe condition.

Herbst involved Herbst's fall down the cement stairwell on the outside of a building owned by defendant Miller. Herbst was using the stairs to enter an apartment in the building. The stairwell had been specifically built to facilitate ingress and egress to the apartment. There was no handrail along the stairwell, and as Herbst was descending the stairs, she slipped and fell. This Court concluded that Miller was in violation of the State Building Code at the time of the construction of the building and was in violation of the town's building code at the time of the accident. Although Herbst was concerned with the UBC, there was no analysis about whether the UBC applied to the area in question; there was simply a blanket assumption that the UBC did apply.

We suspect that a similar assumption guided the trial court in the present case since no reasons are given for the court's conclusion that the area in question was a "ramp" in its order granting plaintiffs' motion that the area where Knutson fell was subject to the requirements of the UBC. In reviewing a trial court's conclusions of law, this Court must determine whether the tribunal correctly applied the law. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603. Our review convinces us that the trial court incorrectly applied the UBC to the instant case. All the evidence before the court was to the effect that the area in question was not a "ramp" within the meaning of the UBC and that the UBC did not apply in the instant case.

The appellants argued that the District Court erred in not applying landowner liability law in this case, including the principles of notice and knowledge of a dangerous condition. The respondents emphatically denied that landowner liability law applied to the instant case. We agree with the appellants that this case is purely and simply a landowner liability case. Even Davis, is similar to the present case in many respects and also involved issues of landowner liability, stating that "[a] landowner has a duty to use ordinary care in maintaining his premises in a reasonably safe condition or to warn those legally on the land of any hidden or lurking dangers." Davis, 796 P.2d at 184. This is the issue in the present case - whether T.J.'s Lounge exercised

9

ordinary care in maintaining its premises in a reasonably safe condition.

We hold that the District Court erred in concluding that the UBC applied as a matter of law to the area where Knutson fell and by instructing the jury that the violation of the UBC constituted negligence per se. Accordingly, we reverse and remand for new trial.

## II. THE CONSTITUTIONALITY OF SECTION 27-1-308, MCA.

IS the $50,000 distinction in § 27-1-308, MCA, unconstitutional in that it violates the equal protection and due process clauses of United States and the Montana Constitutions?

The respondents challenge the validity of a clause in § 27-1-308(1), MCA, under the United States and Montana Constitutions. They assert that the clause in the statute violates due process and equal protection rights under both constitutions.

Section 27-1-308(1), MCA, provides:

> 27-1-308. Collateral source reductions in actions arising from bodily injury or death ▪ subrogation rights. (1) In an action arising from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff's recovery must be reduced by any amount paid or payable from a collateral source that does not have a subrogation right.

At the outset, we note that Knutsons do not challenge the constitutionality of the modification of the collateral source rule as codified by § 27-1-308, MCA, as a whole. Rather, the Knutsons challenge on constitutional grounds only the clause in subsection (1) of the statute which states that "when the total award . . . is

10

in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff's recovery must be reduced by any amount paid or payable from a collateral source...." Section 27-1-308, MCA.

Inasmuch as we have not previously had the opportunity to pass upon the constitutionality of the modifications to the collateral source rule, we are not convinced that it is appropriate that we undertake that analysis on the limited issue framed by the parties -- i.e. whether the distinction between those persons whose awards total $50,000 and those whose awards exceed $50,000 is unconstitutional because it does not treat similarly situated individuals in the same manner by the government. Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.

More importantly, in view of our determination to remand this case for new trial, it is arguable that, at this juncture, Knutsons are without standing to challenge the constitutionality of the statute.

Accordingly, we decline to address the constitutionality of the modifications to the collateral source rule at this time.

REVERSED AND REMANDED FOR NEW TRIAL.

_____
Justice

We Concur:

_____
Chief Justice

_____
John Conway Harrison

11

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that the Uniform Building Code did not apply to the location where plaintiff Darlene Knutson was injured and that defendants were not negligent as a matter of law, based on the undisputed facts in this case.

The issue before the District Court was really a simple matter of statutory construction and application, and not nearly as complicated as suggested by the majority opinion.

Defendants purchased the building where their business was operated in 1977, and in 1981 applied for a building permit authorizing construction of an addition to the building. Prior to that construction, there were entrances on the northwest and southwest corner of the building, both of which were accessible from the parking lot located on the property. Neither entrance required use of the ramp on which Knutson was injured. However, due to the 1981 addition, the entrance on the southwest corner was closed, and in order to meet building code requirements, a new entrance was constructed at the southeast corner at the rear of the building. This entrance was not accessible from the parking lot and could only be reached by the ramp Knutson was descending at the time of her injury.

The evidence was that because parking was inadequate on defendants' premises, and because there was additional parking available across the alley behind defendants' premises, approximately 40 percent of their customers entered their business through the rear entryway at the southeast corner of the building.

13

contrary to suggestions in the majority opinion, this was not primarily a parking area. In fact, public parking on the ramp was specifically prohibited.

When the southeast entrance was constructed, the Uniform Building Code provided that a ramp providing egress from a building could not exceed a slope of 12.5 percent, and required that any ramp with a slope steeper than 6.67 percent have a handrail. The defendants' own expert concluded that the slope on this ramp was 13.62 percent and no handrail was provided.

In *Herbst v. Miller* (1992), 252 Mont. 503, 507, 830 P.2d 1268, 1271, we held that where the relevant provision of the Uniform Building Code has been adopted by a municipality, a violation of that provision is negligence per se. In this case, documentation provided to the District Court prior to the issuance of its order established that: the Uniform Building Code was adopted as an ordinance by the City of Great Falls on April 19, 1965; that ordinance was in effect when defendants constructed the new rear entrance to their building in 1981 or 1982; and that the ordinance was in effect on the date of Knutson's injury.

Section 3301(c) of the Uniform Building Code, 1979 edition, provides that an "exit" from a building is "a continuous and unobstructed means of egress to a public way and shall include intervening . . . ramps . . . exit passageways, exit courts and yards." Although ramps are not defined in the Code itself, § 401 provides that "[w]here terms are not defined, they shall have their ordinary accepted meanings within the context with which they are

14

used. *Webster's Third New International Dictionary of the English Language, Unabridged,* copyright 1961, shall be considered as providing ordinary accepted meanings." As conceded in the majority opinion, a ramp is defined in Webster's Third New International Dictionary of the English Language (3d ed. 1961) as "a sloping way: as a: a sloping floor or walk leading from one level to another . . . ."

The area where Knutson was injured was clearly a sloping way or walk leading from the level of defendants' rear entry to the level of the alleyway. The majority's conclusion (without any authority) that it is not a walkway ignores the undisputed fact that 40 percent of defendants' customers entered the business premises by traversing this sloping route and that there was no other access to the rear entrance.

It is equally clear that the sloped walkway leading from the back door of defendants' premises to the alley behind the building provided egress to a public way. Section 3301(c) of the UBC defines "public way" as "any street, alley or similar parcel of land . . . dedicated or otherwise permanently appropriated to the public for public use and having a clear width of not less than 10 feet."

Having established, based on the plain language of the UBC, that Knutson was injured while traversing a ramp which provided egress from defendants' premises, the only remaining question was whether defendants complied with the UBC's requirements for ramps. Section 3306 of the UBC provides that:

> (a) General. Ramps used as exits shall conform to the provisions of this section.

15

. . . .
(c) **Slope.** Ramps required by Table No. 33-A shall not exceed a slope of one vertical to 12 horizontal. The slope of other ramps shall not exceed one vertical to 8 horizontal.
. . . .
(e) **Handrails.** Ramps having slopes exceeding one vertical to 15 horizontal shall have handrails as required for stairways, except that intermediate handrails shall not be required.

The fact that the ramp leading from the alley behind defendants' premises to the rear doorway did not meet the requirements set forth in § 3306 is undisputed. Therefore, there were no factual issues for the District Court to submit to the jury. The District Court was correct when it concluded as a matter of law that the UBC was applicable to the area where Knutson was injured, and that based upon the undisputed facts, defendants violated the terms of that Code. This fact situation is only made complicated by the rationale employed by the majority to arrive at its conclusion.

For example, in spite of the plain language of the UBC, as set forth above, and the undisputed facts, as previously discussed, the majority concludes that the District Court's order is particularly troubling because of the fact that there was no evidence upon which to base its ruling. The majority then goes on to discuss opinions by the Great Falls City Engineer and a consultant retained by defendants to the effect that the UBC was not applicable to the location in question. However, whether or 'not the UBC was applicable was a question of law to be determined by the District Court based upon its interpretation of the Code. As we have repeatedly held, opinion evidence is not relevant to establish a violation of law. In *Heltborg v. Modem Machinery* (1990) , 244 Mont. 24,

16

795 **P.2d** 954, we adopted the Fifth Circuit's reasoning from its opinion in *United States v. Lueben* (5th Cir. **1987)**, 812 **F.2d** 179, *aff'd on reh'g* **(1987)**, 816 **F.2d** 1032, when it stated that:

> The two questions quoted above illustrate the major surviving exception to the rule that expert opinions on an ultimate issue are admissible: an exvert may not express an opinion on a conclusion of law.

*Heltborg,* 795 **P.2d** at 957 (emphasis added).

*We* held in *Heltborg* that:

> Clearly an expert may testify to an ultimate issue of fact and we have previously so held. See, e.g., Scojield v. *Estate of Wood* **(1984)**, 211 Mont. 59, 683 **P.2d** 1300 (court properly allowed highway patrolman to testify as to cause of accident): *Wollaston v. Burlington Northern, Inc.* (198 0) , 188 Mont. 192, 612 **P.2d** 1277 (court properly allowed highway patrolman to testify as to cause of accident); *State v. Petko* **(1978)**, 177 Mont. 229, 581 **P.2d** 425 (court properly allowed expert to testify that substance was marijuana *even* though this was an ultimate factual issue). We emphasize, however, that there is a distinction between testimonv on the ultimate factual issue, and testimonv on the ultimate legal issue.

*Heltborg,* 795 **P.2d** at 958 (emphasis added).

For that reason, *we* held in *Heltborg,* 795 **P.2d** at 958-59, that the plaintiff's expert in a wrongful discharge claim could not testify to his legal conclusion that the employer had violated the covenant of good faith and fair dealing. Likewise, in *Hart-Anderson v. Hauck* **(1988)**, 230 Mont. 63, 748 **P.2d** 937, we held that it was erroneous for a witness to state his opinion regarding the law of the forum. In *Smith v. Rorvik* **(1988)**, 231 Mont. 85, 751 **P.2d** 1053, we held that a highway patrolman's opinion regarding whether traffic laws had been violated was irrelevant and inadmissible.

17

Clearly, the determination of whether laws are applicable and have been violated is the exclusive responsibility of the District Court and is not, according to our previous case law, the proper subject of expert testimony. The District Judge in this case should be complimented for following our prior decisions, not criticized as he has been for ignoring irrelevant "expert" opinions. Neither should plaintiffs be criticized, as they are by the majority, for failing to offer the kind of evidence the same majority has previously ruled inadmissible.

The majority accuses plaintiffs and the District Court of simply assuming the applicability of the UBC and limiting its proof to the angle of slope on the ramp in question. However, that is not correct. The District Court's conclusion that the UBC was applicable was based upon extensive deposition testimony and affidavits and lengthy briefing from both parties. Plaintiffs' proof upon which the District Court's order was based included the following: a description and photographs of the ramp and its relationship to defendants' building and the public way behind defendants' building; testimony regarding the pedestrian purpose for which the ramp was primarily used; the fact that parking by patrons was specifically prohibited in that area; and testimony that access to the rear door of defendants' premises was impossible other than by traversing the ramp in question. No other evidence was necessary. Because of the undisputed evidence, the issue before the District Court was purely a legal issue, and not a very complicated one at that.

The majority opinion alleges that the arguments made by plaintiffs did not discuss the definition of "ramp" or provide any other basis for supporting the District Court's conclusion. However, neither is that correct. The briefing provided by plaintiffs to the District Court prior to its order dated October 14, 1992, fully discussed the definitions set forth in the UBC, as well as the definition incorporated by reference from Webster's Third New International Dictionary of the English Language. No further definitions were relevant nor necessary.

The majority opinion criticizes the District Court's lack of analysis, but then concludes, without any basis or analysis, that the sloped walkway providing the only access to the rear door of defendants' building was not a "sloping way" or a "walk leading from one level to another." Apparently, the majority is not willing to assume the same analytical requirements that it would impose on the District Court.

The majority opinion concludes that based on its reading of the applicable case law both in and out of Montana, the area on which Knutson was injured is "more akin to a driveway, or a sloped parking area, than the type of ramp envisioned by the UBC." However, no Montana cases are cited for that principle, nor are there any which could be cited. The majority does cite several cases from other jurisdictions. However, none of them are in any way relevant to the proposition for which they are cited. None of them even involve the issue with which this case is concerned.

19

Specifically, *Mortimer v. Martin* (Cal. Ct. App. 1957), 308 P.2d 840, was not concerned with an exterior ramp. The plaintiff in that case was injured on an inside ramp and the court held that the district court erred by failing to instruct the jury of the city ordinance requirements pertaining to ramps in that locale.

In *Sorensen v. Western Hotels, Inc.* (Wash. 1960), 349 P.2d 232, the facts did concern an exterior ramp. However, the only issue was whether the city's building code could be applied retroactively to establish the defendant's negligence.

In *Miller v. Broadmoor village, Inc.* (La. Ct. App. 1975), 321 so. 2d 925, the issue was whether the plaintiff was injured on an exit way from a store, as defined in the city's building code. However, the definition of an exit way in that city's building code was entirely different from the definitions applicable to this building, and did not include any discussion of ramps providing egress to a public way.

*Grand Union Company v. Rocker* (Fla. Dist. Ct. App. 1984), 454 So. 2d 14, dealt only with the issue of whether a violation of the county's building code established negligence per se, or was merely evidence of negligence. As mentioned, this Court previously decided that issue in *Herbst.*

Finally, *Foster v. Kwik Chek Super Markets, Inc.* (Ala. 1969), 224 so. 2d 895, dealt with a. sloped area connecting a horizontal sidewalk to a parking lot. That court simply held that based on that city's definition of an exit ramp, it did not meet the definition. *Foster,*

224 So. 2d at 896. However, the definition was entirely different than the definition with which we are concerned in this case, and the principle for which that case stands is in no way relevant to our conclusion.

The majority's reliance on such irrelevant decisions simply illustrates its inclination to make a simple issue more complex than it should be.

The fact that the area where Knutson fell is covered by the UBC, and the fact that that Code was violated, based on the undisputed facts in this case, is clear from any fair and objective reading of the plain language of the Code. Knutson's injury due to the steepness of this entrance made dangerous by slippery conditions is exactly what the Code was designed to prevent.

The Code applies to entryways. Entryways include any ramp providing access from the building to the public right-of-way. While ramp is not specifically defined in the Code, the definition of ramp included in the Dictionary is applicable by reference from the Code. Ramp is defined as "a sloped way."

There is no question that under the facts in this case, Knutson was injured on a sloped way providing egress from defendants' building to the public right-of-way. Therefore, what is the issue for a jury to decide? This ramp did not conform to the UBC, and therefore, defendants were negligent per se. The only issues to be resolved were whether that negligence was a cause of injury to plaintiffs and the extent of plaintiffs' damages. Those issues have already been decided.

This case may have provided an interesting intellectual exercise for the majority.  However, they failed to consider that by ignoring the UBC's plain language, they have once again reversed a substantial verdict in favor of a seriously injured and damaged person and have wasted the time and efforts of the trial court, the citizen jurors who participated in this case, the witnesses who testified, and the attorneys who labored on behalf of the parties.

This is another decision rendered in the practical vacuum of the Supreme Court and with very undesirable consequences for nearly everyone  involved.

Once again, as it has so often in the past, the **majority** of this Court has substituted its own opinion of what the law should provide for the plain language of the law itself. And once **again,** as it has so often in the past, by imposing its values on the rest of the State, the burden of the majority's arbitrary judgment falls on one of those least able to bear it.

For these reasons, I dissent from the **majority** opinion.

_____
                                        stice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
                                        Justice